Taylor, J.
The issue is whether Detroit Ordinance 35-98 is exempt from the power of referendum found in the Detroit Charter. On its own motion, this Court voted to grant leave to appeal[1] before a decision by the Court of Appeals. Having heard oral argument, we now find as follows:
(1) The power of referendum in the Detroit Charter does “not extend to the budget or any ordinance for the appropriation of money . . . .” Detroit City Charter, art 12, § 12-101.
(2) Detroit Ordinance 35-98 provides in pertinent part:
The Three Hundred Thirty-Three Thousand Three Hundred Thirty-Three and 34/100 Dollars ($333,333.34) early advance heretofore paid by the developer to the City pursuant to the development agreement is hereby appropriated to the temporary casino site support and infrastructure improvement ....
(3) An appropriation of $333,333.34 is an “appropriation of money” and ordinance 35-98 is “any ordinance.”
*305 (4) Therefore, the power of referendum in the Detroit Charter does not extend to ordinance 35-98.
Accordingly, consistent with Michigan United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359; 630 NW2d 297 (2001), the circuit court’s judgment granting MGM’s motion for summary disposition is affirmed. The case is remanded to the Court of Appeals for resolution of the remaining issues.
RESPONSE TO JUSTICE WEAVER’S DISSENT
Justice Weaver dissents, asserting that we improvidently granted leave in the case at bar to be heard with the MUCC case because it has now become apparent the cases are too dissimilar to be considered together. She further asserts that the cases are no longer being considered together, in that the MUCC decision was issued just over three weeks ago. We cannot agree. The fact that the MUCC opinion was issued less than a month ago does not mean the case at bar and the MUCC case were not considered together. The MUCC decision was issued on an expedited basis in order to meet a statutory deadline. No such deadline exists in this case. Hence the Court has taken the prudent course of allowing additional time before issuing its decision in this case before the end of our term on July 31, 2001. Further, the MUCC case and the case at bar are similar.[2] While the language in the Michigan Constitution and the Detroit Charter are *306 not identical, they are closely related and warrant application of the same analysis.[3] That is why we are affirming on the basis of our holding in the MUCC case.
RESPONSE TO JUSTICE CAVANAGH’S DISSENT
Justice Cavanagh dissents, asserting this appeal should be dismissed on the basis of mootness. He contends the case is moot because mgm renovated the building and that such renovation precludes the Court from being able to grant defendants the relief they request. Justice Cavanagh also posits that mgm would have a legal right to stay in the casino even if the ordinance went to a referendum and lost because the renovated casino would constitute a prior nonconforming use that could remain despite any zoning change.
The claim of mootness does not withstand serious scrutiny. Preliminarily, we note that the burden of demonstrating mootness is a “heavy one.” Los Angeles v Davis, 440 US 625, 631; 99 S Ct 1379; 59 L Ed 2d 642 (1979). This means to get an appeal dismissed as moot, thus depriving a party seeking redress of a day in court, the party urging mootness on the court must make a very convincing showing that the opportunity for an appellate court to review the matter should be denied. Not surprisingly, it is *307 rare for a court to grant such a motion. Furthermore, neither mgm nor the city filed a motion to dismiss the appeal on the basis of mootness. Indeed, the mootness argument is only presented in a manner that conveys its infirmity.[4]
While it is true that defendants did not seek a stay after the trial court ruled against them (nor did they have to), they did file a timely appeal in the Court of Appeals. They also sought, albeit unsuccessfully, an expedited hearing from the Court of Appeals. It is also the case that the city and mgm were on notice that they proceeded at their peril if they built before the appeal was resolved because defendants sent a letter to the city council and mgm advising them exactly of that. Under such circumstances, one cannot reasonably conclude that defendants’ claim is moot. In fact, the obviousness of this is probably why the city and mgm did not bring such a motion.
It not only is common sense, but also a well-established legal principle, that a party can not obliterate an opponent’s appeal, on the basis of mootness, by so changing the status quo during the appeal (remarkably enough in this case by building the very casino that was at issue in the appeal while the appeal was pending) that they can then argue it is impossible to return to the situation that existed when the appeal was filed. The United States Supreme Court, no less, has said as much. In Jones v Securities & Exchange Comm, 298 US 1, 15-18; 56 S Ct 654; 80 L Ed 1015 (1936), our nation’s highest Court said:
*308 The rale is well settled, both by the courts of England and of this country, that where a suit is brought to enjoin certain acts or activities, for example, the erection of a building or other structure, of which suit defendant has notice, the hands of the defendant are effectively tied pending a hearing and determination, even though no restraining order or preliminary injunction be issued.
The conclusion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peni and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided. [Emphasis added.]
We concur with the United States Supreme Court, reinforced in this conclusion by the fact that there is no contrary authority in our jurisprudence.[5]
We also note that it is premature for Justice Cavanagh to conclude on the basis of Heath Twp v Sall, 442 Mich 434; 502 NW2d 627 (1993), that MGM would have a legal right to stay in the building if the ordinance went to a referendum and lost. If this were *309 to occur, MGM could then make whatever arguments it had at that time.
Justice Cavanagh asserts that leave was granted in this case by the Court in order to “demonstrate that the Court would apply the same logic” to this case as we did in the MUCC case. Post at 310.
To the charge that the majority attempts to apply the same logic to all cases coming before it, we plead guilty. Justice Cavanagh’s discontent with our approach merely reflects our differing views on the proper role of the judiciary in our representative democracy.
We, the majority, apply the text of the constitution, a statute, or an ordinance according to its ordinary meaning. We are prepared to live with the result of the plain application of such texts, regardless of whether we personally agree or disagree with the outcome. We subscribe to the notion that judges are not the lawgivers in our society; rather, they are the interpreters of the law.
Justice Cavanagh’s judicial philosophy is perhaps more “complex” than ours insofar as he is willing to depart from giving texts a plain reading for a more “complicated” construction, one less respectful of the words themselves used by the lawgiver, in this case the people of the city of Detroit in enacting their charter. See, for example, his MUCC dissent, where he introduces a “core function” test as a means of avoiding the conclusion that a one million dollar appropriation is, in fact, an appropriation under Const 1963, art 2, § 9. We decline to read in such complexities where none are apparent in the language of the law.
*310 Corrigan, C.J., and Young and Markman, JJ., concurred with Taylor, J.

 464 Mich 855 (2001).

 In the MUCC case the issue was whether a statute that included a million dollar appropriation was exempt from a referendum because it was an “act[] making [an] appropriation!] for [a] state institution!],” whereas the issue in the case at bar is whether an ordinance that included a one-third of a million dollar appropriation is exempt from a referendum because it constitutes “any ordinance for the appropriation of money.”

 Although the issues in each case warrant application of the same analysis, when we granted leave we were faced with a split of authority between the Court of Appeals decision in MUCC, swpra (which applied the amorphous “core function” test) and Judge Sapala’s decision in this case (which relied on the plain and unambiguous language of the Detroit City Charter). By considering this case along with the MUCC case we have provided an efficient resolution to a single problem.

 The supplemental brief filed on behalf of the city clerk and the city council merely mentions mootness in a footnote found on page 19 of its twenty-page brief.

 Also instructive is West v Secretary of the Dep’t of Transportation, 206 F3d 920 (CA 9, 2000). In this case, there was a dispute regarding the building of a highway. A builder argued the case was moot because the construction for stage 1 of the highway was already complete. The court rejected this argument, noting that if completion of construction was the test, parties could merely ignore the requirements of the law, build its structures before a case gets to court, and then hide behind the mootness doctrine. The court concluded that “[s]uch a result is not acceptable.” See also Gamlen Chemical v Gamlen, 79 F Supp 622, 631 (WD Pa, 1948):
Equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status though he succeeded in making the change before the chancellor’s hand actually reached him.