HERMAN v BERRIEN COUNTY

Docket No. 273021. Submitted March 13, 2007, at Grand Rapids. Decided April 26, 2007, at 9:00 a.m. Leave to appeal sought.

Joe Herman and others brought an action in the Berrien Circuit Court against Berrien County, challenging the ability of the county board of commissioners to locate a law enforcement training facility with outdoor shooting ranges near the plaintiffs' residences. The plaintiffs argued that the shooting ranges violated various zoning and antinoise ordinances of the township in which the facility would be located. The court, Paul L. Maloney, J., granted the county's summary disposition motion and denied the plaintiffs' summary disposition motion, concluding that the proposed county building and the shooting ranges were exempt under MCL 46.11 from the township's ordinances. The plaintiffs appealed.

The Court of Appeals *held*:

The language of MCL 46.11(b) and (d) grants the county the sole authority to choose the site for a county building. The site includes the entire parcel involved, not just the area of land on which the building actually sits. The township's ordinances do not apply to the county's siting of the entire county facility. Accordingly, the uses on the site of the county's building, including the shooting ranges, are also not subject to the township's ordinances.

Affirmed.

DAVIS, J., dissenting, would conclude that MCL 46.11 permits counties to erect buildings within a township without regard for the township's zoning ordinances and to carry on whatever additional use or development of the property would be necessary or incidental to the normal and reasonable use of that building, again without regard for the township's ordinances. Any use or development of the property beyond what is necessary or incidental to the normal and reasonable use of the building itself, however, must comply with the township's zoning ordinances. Judge DAVIS would reverse the orders granting summary disposition for the county and denying summary disposition for the plaintiffs and remand the case for further proceedings.

COUNTIES — COUNTY FACILITIES — ZONING — TOWNSHIP ORDINANCES.

> A county has the sole authority to choose the site for a county
> building, and the site includes the entire parcel involved, not just
> the area of land on which the building sits; a township's ordi-
> nances do not apply to the county's siting of the entire county
> facility, and the uses of the site of the county building are not
> subject to the township's ordinances (MCL 46.11[b], [d]).

*Rhoades McKee PC* (by *Gregory G. Timmer* and *Michael W. Walton*) and *Westrate & Thomas* (by *Mark A. Westrate*) for the plaintiffs.

*R. McKinley Elliott* and *Lewis Reed & Allen P.C.* (by *Michael B. Ortega* and *Robert C. Engels*) for the defendant.

Before: O'CONNELL, P.J., and MURRAY and DAVIS, JJ.

MURRAY, J.

## I. INTRODUCTION

The Berrien County Board of Commissioners chose a site to locate a new law enforcement training facility. The facility includes an administrative building, and, located behind the building, there will be four shooting ranges. Plaintiffs, all neighboring residents, challenged the county's ability to operate the shooting ranges that presumably are in violation of several township ordi-nances. The trial court held that the building and the shooting ranges were exempt from township ordi-nances. Plaintiffs now challenge these rulings. We af-firm.

## II. FACTS AND PROCEDURAL HISTORY

The facts in this case are neither detailed nor in dispute. Defendant Berrien County owned a parcel of

real estate within Coloma Charter Township, which itself is located within the county. This parcel was chosen by the county for development of a law enforcement training facility, which would include facilities for both indoor and outdoor firearms training and activities, along with associated buildings, structures, and parking.

As noted, plaintiffs alleged that certain parts of this facility violated township zoning and antinoise ordinances. In particular, plaintiffs argued that the outdoor shooting ranges—and really anything other than the one building located on the site—had to comply with the township ordinances. The county, on the other hand, contended that it did not have to comply with the ordinances because of its power to choose the site under MCL 46.11(b) and (d). On cross-motions for summary disposition, the trial court granted defendant's motion and dismissed plaintiffs' case.[1]

### III. ANALYSIS

In *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 710-711; 664 NW2d 193 (2003), the Supreme Court held that a county was exempt from township zoning ordinances when it came to siting county buildings. The Supreme Court's decision was based on the more recent and direct language found within MCL 46.11(b) and (d), in comparison with the more outdated and general language within now-repealed MCL 125.271(1). Both parties agree that the siting and erecting of county buildings are exempt from township zoning and antinoise ordinances. In other words, the parties agree that the county can properly site the building at issue

---

[1] The final dismissal actually occurred after the second set of cross-motions for summary disposition, but the trial court's ultimate ruling and rationale remained the same.

without regard to the approved uses for the site contained within the township zoning ordinances. The question that they disagree over is whether other physical improvements located on the property where the county building is sited are also immune from the requirements of the township zoning and antinoise ordinances. The statutory law relied on by the county, and that was at issue in *Pittsfield Twp*, is MCL 46.11, which provides:

> A county board of commissioners, at a lawfully held meeting, may do 1 or more of the following:
>
> (a) Purchase or lease for a term not to exceed 20 years, real estate necessary for the site of a courthouse, jail, clerk's office, or other county building in that county.
>
> (b) Determine the site of, remove, or designate a new site for a county building. The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.
>
> * * *
>
> (d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them.

As the *Pittsfield Twp* Court recognized, MCL 46.11(b) and (d) are a policy determination by the Legislature that when it comes to "siting" county buildings, counties do not have to comply with any township ordinances. Rather, the county has sole discretion on where to locate its buildings, without regard to local use regulation. Therefore, when a county sites a county building or buildings on a particular parcel, the *uses* of the site where the building will be erected can be in total contravention to what is required by any township ordinance. *Pittsfield Twp, supra* at 711.

As generally noted above, MCL 46.11(b) and (d) grant a county board of commissioners the power to "[d]etermine the site of . . . or designate a new site for a county building," as well as to "[e]rect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them." In *Pittsfield Twp*, the Court concluded that the power to site county buildings is, except for one inapplicable exception, unlimited. *Pittsfield Twp, supra* at 711. In part because it is an essentially unlimited grant of power, the *Pittsfield Twp* Court held that MCL 46.11(b) and (d) give counties the ability to site county buildings without regard to compliance with township zoning ordinances. In doing so, the Court also recognized that if the statute were not so interpreted, MCL 46.11(b) and (d) would have granted counties nothing—because they would still have to comply with the zoning ordinances. *Pittsfield Twp, supra* at 714.

Of course, the question in this case is not whether a county building must comply with the township's zoning ordinances; no one disputes that the township's ordinances do not apply to this county building. There is also no dispute that the firearms training facility is within the power of a county to operate. The question is whether the county must comply with the township's ordinances when placing ancillary improvements on the site chosen for the county building.

Here, the specific power exercised by the county commission was to "designate a new site for a county building." MCL 46.11(b). "Site" is not defined in the statute, so resorting to a dictionary is necessary to determine the ordinary meaning of the word. *Northville Charter Twp v Northville Pub Schools*, 469 Mich 285, 292; 666 NW2d 213 (2003) (opinion by TAYLOR, J.). In *Northville Twp* the Supreme Court looked to the dictio-

nary to define "site" when determining the meaning of "site plan" under the Revised School Code:[2]

> This leaves to be determined the definition of "site plan." The dictionary defines "site" as "The place where something was, is, or is to be located," *The American Heritage Dictionary of the English Language* (1982), or similarly, "[T]he area or exact plot of ground on which anything is, has been, or is to be located . . . ." *Random House Webster's College Dictionary* (1997). [*Id.*]

Using these same definitions, it is clear that when designating a new "site" for county buildings, the "site" includes the entire area of ground on which the building is to be located. In other words, it is the "site" or, in real terms, the entire parcel where the buildings will be located, that is not subject to local regulation. Hence, the uses on the site of the building are not subject to the township's ordinances. *Pittsfield Twp, supra* at 711.

There is more to the siting and erection of a building than simply putting the building on the property. As can be seen in this case, at a minimum parking lots, sidewalks, lighting, and landscaping would be developed within the area adjacent to the county building placed on this new site. Often there may also be physical improvements to the property that are outside the physical structure of the building but are related to the building's purpose. All such improvements are on the site chosen by the county for the building and, consequently, are immune from the township ordinances. MCL 46.11(b) and (d). Hence, the shooting ranges located on the site are not subject to the town-

---

[2] The *Northville Twp* case also involved a township zoning immunity issue, i.e., whether statutory language giving "site plan" approval to the state Superintendent of Public Instruction exempted the school district's site plans from township zoning requirements. *Northville Twp, supra* at 288.

ship's zoning ordinances because they are located on the property chosen as the site for a county building.[3] Because the statute contains no restrictions or limitations in this regard, *Pittsfield Twp, supra* at 711, we hold that the township's ordinances (including anti-noise ordinances) do not apply to the county's siting of the entire training facility.

Finally, there is nothing within the township zoning statute, former MCL 125.271(1), that applies more specifically to the physical improvements on the property than does MCL 46.11(b) and (d). *Pittsfield Twp, supra* at 714-715. Thus, contrary to plaintiffs' position, the statutes cannot be read to provide a legislative policy choice for townships to *have* the power to regulate any physical structures located on a site of a county building but to have *no* power to regulate the uses of the county building itself. And the parties have not cited

---

[3] Although the dissent uses colorful language to warn property owners about the potential dangers that could result from the county's decision to place the training facility at this location, we believe the dissent's concern in this regard confuses politics with the law. It is not our role to decide whether the decision of the county board of commissioners in placing the facility at this location was a wise one; rather, we must decide the narrow legal issue of whether the physical improvements are subject to township ordinances. See *Tull v WTF, Inc*, 268 Mich App 24, 36 n 5; 706 NW2d 439 (2005), and *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 45; 737 NW2d 187 (2007). County commissioners are elected to decide county policy issues within the sphere of county power. MCL 45.555; MCL 45.556(a). If plaintiffs and a sufficient number of area residents are unhappy with the policy choices supporting the decision to place the facility at this location, the political process should provide an adequate remedy. See *Northville Twp, supra* at 297 n 5 (opinion by TAYLOR, J.). Again, what we decide today is only whether the building, or the entire site chosen for the building, is immune from township ordinances. Reasonable minds can certainly disagree with that difficult legal issue, but we will not join the dissent in discussing the potential implications—good or bad—from the *county's* decision to locate the building and facility at this particular location. See *MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc*, 465 Mich 303, 309; 633 NW2d 357 (2001).

any law regarding a local government's ability to regulate this type of shooting range.

The dissent agrees that the grant of power under MCL 46.11(b) and (d) extends to the siting and erection of buildings, but it proposes to restrict physical improvements or additional uses of the property to those that are "necessary or incidental to the normal and reasonable use of" a county building:

> Therefore, the grant of authority to the counties in MCL 46.11 permits counties to erect buildings within a township without regard for the township's zoning ordinances *and* to carry on whatever additional use or development of the property would be necessary or incidental to the normal and reasonable use of that building, again without regard for those ordinances. However, any use or development of the property beyond what is necessary or incidental to the normal and reasonable use *of the building itself* must comply with the township's zoning ordinances. [*Post* at 399 (emphasis in original).]

In our view, the proposed test set forth by the dissent—which, on its face, appears reasonable and practical—establishes limitations that are not contained in the statute. Nor is any such test needed. Instead, as we have concluded, language in the statute grants the county the authority to choose the site for county buildings, and the site entails the entire parcel, not just the area of land on which the building actually sits.

Affirmed.

O'CONNELL, P.J., concurred.

DAVIS, J. (*dissenting*). I respectfully dissent.

Kevlar window coverings, Kevlar blankets for livestock, and Kevlar playclothes for the kids may become de rigueur in Coloma Township given the majority's holding in this case.

It is a decision that should be of grave concern to every owner of real property in this state. It confers unfettered license on county commissioners to disregard township zoning regulations and ordinances for any county purpose, as those purposes may be determined by a given board of county commissioners.

This case arises out of defendant's plans to construct and operate a firearms training facility and outdoor firing ranges for its law enforcement personnel that will be located on a parcel of real property in Coloma Township. Plaintiffs are individual landowners in the vicinity of the proposed firearms training facility, and they object to having the facility near them on the grounds that it would violate Coloma Township zoning and antinoise ordinances. The trial court found that the county boards of commissioners act, MCL 46.1 *et seq.*, and specifically MCL 46.11, gives defendant the authority to disregard the township ordinances with regard to the firearms training facility project.

The statute in question is relatively short and uncomplicated. We all agree that the relevant statutory language is as follows:

> A county board of commissioners, at a lawfully held meeting, may do 1 or more of the following:
>
> (a) Purchase or lease for a term not to exceed 20 years, real estate necessary for the site of a courthouse, jail, clerk's office, or other county building in that county.
>
> (b) Determine the site of, remove, or designate a new site for a county building. The exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat.
>
> * * *
>
> (d) Erect the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them. [MCL 46.11.]

Outdoor firing ranges do not appear anywhere in the statute.

We review de novo questions of statutory construction, with the fundamental goal of giving effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). The intent of the Legislature determines the outcome of a dispute between two local governmental units over whether one may subject the other to its zoning ordinances. *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 709; 664 NW2d 193 (2003). The Legislature's intent must be drawn from the text of the statutes, but no particular words or phrases are necessary. *Id.* at 709-710. In my view, the majority disregards these well-established principles and reaches a result that contravenes the intent of the Legislature and the express limitations of the statute.

As plaintiffs properly concede, our Supreme Court has explained that the authority to "site buildings" granted to counties by MCL 46.11 takes priority over township zoning ordinances.[1] *Pittsfield Twp, supra* at 711, 715. In *Pittsfield Twp*, our Supreme Court ad-

---

[1] At the time this suit was commenced, and at the time *Pittsfield Twp* was decided, a township's zoning authority was granted pursuant to the Township Zoning Act (TZA), former MCL 125.271 *et seq.* Effective July 1, 2006, the TZA has been replaced by the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.* However, pending litigation such as this case is specifically exempted from being affected by the new legislation. MCL 125.3702(2). A superficial review of the MZEA seems to reveal nothing that would mandate a different result had it been in force at the relevant times, and although legislative analysis is not authoritative, it

dressed the specific question whether Washtenaw County could construct a homeless shelter in Pittsfield Township, despite the allegation that doing so would be contrary to the township's zoning ordinances applicable to that particular property, which was zoned limited industrial. *Id.* at 703-705. The Court found that Washtenaw County was not obligated to comply with the Pittsfield Township zoning ordinance when "siting its buildings." *Id.* at 715.

Plaintiffs assert that the situation here is substantially different, because defendant's project predominantly entails making use of the property *outside* a "building." Therefore, plaintiffs' argument is that defendant may choose a building location and construct a building without regard for the zoning ordinances, but defendant must nevertheless comply with the pertinent ordinances regarding anything else done on or with the property. Defendant argues that the logical implication of such a scenario is the possibility that it could construct a building but be prevented from installing a driveway or parking lot necessary to use the building.[2] The issue before us is: To what extent, if at all, may a county disregard a township's zoning ordinances when making use of the rest of the real property on which a county building is placed?

---

indicates that the new legislation was intended to clarify the law rather than change it. The pertinent analysis, in any event, is the grant of authority in MCL 46.11.

[2] Interestingly, the evidence presented to the trial court was that while the firing ranges were well along in their construction, the administrative classroom building had not yet been begun and was, in fact, a second-phase consideration. By the time of oral argument in this Court, counsel for the county represented that construction of the building had begun. The building was contemplated to be the size of a reasonably large house, 3,450 square feet of wood frame construction; the rest of this 14-acre parcel would be available for the discharge of firearms.

To put this particular dispute in perspective, the following averments are quoted from plaintiffs' brief filed with the trial court on the motion for summary disposition:

The Outdoor Shooting Range has been the subject of much debate. Proponents argue that the Outdoor Shooting Range is necessary for proper training of law enforcement personnel as indoor ranges do not provide training environments that mimic the real life experiences of officers in the field. Those opposed to the Outdoor Shooting Range have pointed out the following:

• Approximately 221,800 rounds of ammunition will be fired annually, which number could increase.

• Environmental contamination.

• Automatic and semi-automatic weapons will be used in addition to handguns, shotguns and rifles.

• A bullet from a .308 rifle can travel 2.4 miles.

• The proposed outdoor training facility has 4 ranges with multiple lanes each that are pointed away from the landfill and toward the outlying population.

• The FOP children's soccer and baseball fields are within 1 mile.

• Coloma Schools are within 2.4 miles. Over 50 homes are within 1 mile.

• Up to 200 seasonal farm workers and their children are within range of a .308 rifle. 4 migrant homes are within 1,500 feet.

• The sound of 221,880 rounds of ammunition annually (2,000 rounds per day when training) will destroy the quality of life for those within miles of the site.

• The sheriff estimates that 25% of the training events will be held after dark.

• Over $2.5 million in estimated property loss within first mile.

• Real Estate agents report difficulty selling homes once
this type of facility is built.

It seems obvious that the situation before this Court
today is far different in its nature, scope, and implica-
tions for the surrounding area than the homeless shel-
ter placed in a limited industrial area in Pittsfield
Township.

Neither MCL 46.11 nor our Supreme Court has
defined what constitutes a "building" or "siting a build-
ing" in this context. However, at least for the purpose of
the matter presently before this Court, the parties do
not dispute that the firearms training facility project
will include both a "building" and open-air firing ranges
that are not "buildings." It is therefore not necessary
for this Court to define what is or is not a "building"
today. The majority observes that our Supreme Court
has defined "site" for us as, essentially, the placement
or location of something. *Northville Charter Twp v
Northville Pub Schools*, 469 Mich 285, 292; 666 NW2d
213 (2003) (opinion of TAYLOR, J.). Therefore, the au-
thority granted to a county for "siting its buildings,"
*Pittsfield Twp*, *supra* at 715, is essentially unlimited
authority to *determine the location or placement of its
buildings*.

It is incomprehensible to me how the majority ex-
trapolates that highly specific grant of authority into a
carte blanche for counties to do anything on a parcel of
property as long as they also construct a building
thereon. The statute authorizes placement of *buildings*,
and *only* buildings. It is clear that a county could place,
for example, an office complex, storage facility, or ga-
rage in an arbitrary location without regard for a
township's zoning ordinances. However, the majority's
construction would also apparently permit a county to
place a sports stadium, a toxic waste dump, or a pig

farm anywhere it pleased as long as doing so was otherwise within the county's powers and as long as the county erected a building somewhere on the premises. *Pittsfield Twp* does not support such a construction. The *Pittsfield Twp* Court allowed a building that was to be used as a residential facility in a limited industrial zone. That is a far cry from the repetitive discharge of vast numbers of bullets, out-of-doors in an area zoned primarily agricultural and surrounded by homes, a school, youth soccer and baseball fields, and migrant-worker housing.

Moreover, in *Pittsfield Twp*, our Supreme Court based its conclusion that county authority under MCL 46.11 took precedence over township zoning authority in large part on the relatively specific nature of the grant of authority to counties. *Pittsfield Twp, supra* at 714-715. The zoning authority of townships includes " 'places of residence,' 'other uses of land,' and 'other public requirements . . . .' " *Id.* at 715, quoting former MCL 125.273. This grant of authority to townships by the Legislature does not support a finding "that the *location of county buildings* of any kind should be controlled by township zoning." *Pittsfield Twp, supra* at 715 (emphasis added). "Therefore, when these TZA provisions are viewed alongside the structure of the county power in MCL 46.11, the lack of focus on *county buildings* in the TZA reinforces our view that the Legislature in this circumstance intended that priority be given to the county in *siting its buildings*." *Id.* (emphasis added). Two significant conclusions can be drawn from this analysis. First, our Supreme Court viewed the "siting [of] buildings" as synonymous with "locating buildings." Second, the grant of authority to counties under MCL 46.11 is limited in scope, in relevant part, *only* to the "siting [of] buildings."

Two other cases of note have addressed the interplay
between townships' zoning authority and grants of statu-
tory authority to other bodies. In *Burt Twp v Dep't of
Natural Resources*, 459 Mich 659; 593 NW2d 534 (1999),
our Supreme Court addressed whether the Department of
Natural Resources (DNR) could construct public-access
boat launches on lakefront lots the DNR owned in Burt
Township, despite Burt Township's contention that the
launches were not permitted because they would violate
the township's zoning ordinances. Our Supreme Court
observed that the Legislature had granted townships
"significant authority" to "regulate the use and develop-
ment of boating and recreational facilities such as the one
at issue" and that township zoning ordinances were
required "to, among other things, 'conserve natural re-
sources.'" *Id.* at 665, quoting former MCL 125.273.
Townships were additionally given authority over the
development "of, among other things, 'waterways and
water front developments.'" *Burt Twp, supra* at 666,
quoting former MCL 125.327(2)(b). The Legislature gave
the DNR the authority and responsibility to manage the
lands under its control, which our Supreme Court deemed
a coextensive grant of authority to protect natural re-
sources and develop waterfront developments. *Burt Twp,
supra* at 667-671. However, our Supreme Court concluded
that the specific and detailed statutory grants of authority
to townships indicated a legislative intent that townships
took priority unless a contrary legislative intent was
shown elsewhere. *Id.* at 666; see also *Pittsfield Twp,
supra* at 714-715. Our Supreme Court concluded that the
authority granted to the DNR failed to show any indica-
tion that "in directing that the DNR engage in certain
governmental functions, [the Legislature] intended that
the DNR be authorized to do so in any manner [the DNR]
chooses." *Burt Twp, supra* at 669.

The opposite outcome reached in *Pittsfield Twp* was, as previously indicated, narrowly confined to the siting of county buildings. See *Pittsfield Twp, supra* at 715. This specific and limited scope of authority granted to counties is incompatible with the unrestricted authority that the majority provides today.

In the second case, this Court relied on *Burt Twp* in determining that the Capital Region Airport Authority was authorized by statute to carry on aeronautical operations in townships in derogation of township zoning, but the additional grant of authority to carry on nonaeronautical operations did not extend to ignoring zoning requirements. *Capital Region Airport Auth v DeWitt Charter Twp*, 236 Mich App 576; 601 NW2d 141 (1999). This Court analyzed the relevant statutes and concluded that the airport authority was given exclusive jurisdiction over aeronautical activities on airport property, which "would be thwarted if the agency's aeronautical activities were subject to local land-use ordinances." *Id.* at 590-591. However, the relevant statutes either made *no* mention of nonaeronautical uses of the property or merely *permitted* the airport authority to develop, lease, or use its property for nonaeronautical purposes. *Id.* at 592-593. Thus, although the airport authority was authorized to, among other things, construct a tortilla processing plant on airport grounds, that grant of authority did not take priority over the township's authority to enact and enforce zoning ordinances governing " 'the use of land and structures,' " " 'to insure that the use of the land shall be situated in appropriate locations and relationships,' " and " 'to promote public health, safety, and welfare.' " *Id.* at 593-595, quoting former MCL 125.271(1) (emphasis removed). If tortillas fall within the township's purview and regulatory authority, so surely must the discharge of live ordnance.

As a practical matter, the grant of authority to counties must extend *somewhat* beyond just the actual building itself. The majority, and to some extent the parties, appear to advance a view that the grant of authority is necessarily "all or nothing"; that is, a county is either strictly limited to siting and constructing the building—unable even to, by way of example, connect utilities or lay a sidewalk to access it—or, at the other extreme, is able to do anything it pleases on any other part of the land. Plaintiffs warn of a county making completely arbitrary use of a parcel of property by the mechanistic expedient of placing a building somewhere on the site, whereas defendant warns of a county being permitted to erect a building but subsequently being so encumbered by regulations that the county is literally unable to use it. The only rational construction of MCL 46.11 is a construction that precludes *both* such extreme results.

Defendant is correct that it would be absurd to grant a county the authority to construct a building without the authority to ensure that the building can be used. Therefore, "siting a building" must minimally include such things as providing ingress, egress, parking, utility hookups, sidewalks, and other necessary or normally incidental amenities for the normal and customary use of the facility by its occupants, such as shrubbery, awnings, exterior nighttime illumination, and so on. At the same time, we must appreciate that the Legislature sharply limited the county's authority to the scope of *buildings,* as outlined above. It would therefore be an abrogation of MCL 46.11 to conclude that a county could do whatever it wished with any parcel of property in derogation of township ordinances merely by virtue of placing a building on the property. Such an interpretation would equally defeat the Legislature's expressed intent.

The *only* reasonable construction of MCL 46.11 is that *the building* is the touchstone of the grant of authority to the county. Although "siting a building" must include more than just the building itself, the building is nevertheless the critical element. Everything else not directly related to the building itself done on the property in contravention of a township zoning ordinance must be incidental to or necessary to the use or construction of the building. Therefore, the grant of authority to the counties in MCL 46.11 permits counties to erect buildings within a township without regard for the township's zoning ordinances *and* to carry on whatever additional use or development of the property would be necessary or incidental to the normal and reasonable use of that building, again without regard for those ordinances. However, any use or development of the property beyond what is necessary or incidental to the normal and reasonable use *of the building itself* must comply with the township's zoning ordinances. The majority observes that this test establishes a limitation not contained in the statute—while simultaneously ignoring a limitation that explicitly *is* in the statute.

Plaintiffs concede that the trial court correctly determined that the grant of authority to counties in MCL 46.11 takes precedence over not only zoning ordinances, but also other regulatory ordinances enacted pursuant to the township ordinance act, MCL 41.181 *et seq.* Nothing in MCL 46.11 refers to zoning specifically, and the principles articulated by our Supreme Court in *Pittsfield Twp* logically apply with equal force to all township ordinances, whether zoning or regulatory. However, the same limitation applies: The grant of authority in MCL 46.11 is limited to buildings themselves and to the normal, necessary, and incidental activities involved in using the building itself. The

Legislature did not intend to immunize counties from township ordinances beyond that scope.

The orders granting summary disposition to defendant pursuant to MCR 2.116(C)(8) should be reversed. Because the orders denying summary disposition to plaintiffs pursuant to MCR 2.116(C)(10) were based on the orders granting summary disposition to defendant, they should also be reversed. I would remand this case to the circuit court for further proceedings consistent with this opinion. I would not retain jurisdiction.