CITY OF BAY CITY v BAY COUNTY TREASURER

Docket No. 294556. Submitted July 14, 2010, at Lansing. Decided April 5, 2011, at 9:05 a.m.

Bay City filed an action in the Bay Circuit Court seeking declaratory relief and a writ of mandamus directing the Bay County Treasurer to transfer to the city certain tax-foreclosed properties. Defendant had refused to sell the parcels to plaintiff because he was not satisfied that plaintiff would return the properties to a position of generating tax revenue. Plaintiff asserted that it had a public purpose for acquiring the properties and that therefore defendant had a statutory duty to sell the properties to plaintiff. After a bench trial, the court, Kenneth W. Schmidt, J., concluded that plaintiff's plans for two of the properties were too speculative to serve a public purpose but ordered defendant to convey to plaintiff title to the other two properties. Plaintiff appealed the part of the order denying the conveyance of one parcel.

The Court of Appeals *held*:

1. Defendant's subsequent offer to convey the parcel to plaintiff did not render plaintiff's appeal moot. An action is not moot if there remains a case or controversy between the parties. Plaintiff had not accepted defendant's offer, and conveyance of the parcel would have granted only some of the relief plaintiff sought. In addition to the conveyance, plaintiff also sought a declaratory judgment that its stated public purpose was a valid public purpose under MCL 211.78m.

2. Under MCL 211.78m(1), a city, village, or township may purchase for a public purpose tax-foreclosed property located within its boundaries. The statute places no restrictions or conditions on what constitutes a public purpose and does not require that a public purpose be executed efficiently and expeditiously. The trial court's reading such restrictions into the statute usurped plaintiff's authority as a legislative body to determine what constitutes a public purpose.

3. Plaintiff's complaint stated that its purpose was to reduce the number of vacant properties and to remove blighted conditions on the properties, and the resolution it passed to authorize the purchase identified the purpose as stimulating private investment

and economic development. These were valid public purposes, and defendant was therefore required by MCL 211.78m(1) *to convey* the property to plaintiff. The trial court erred by failing to grant plaintiff an order of mandamus.

4. Under MCR 7.216(A)(7) and MCR 7.219(A), the Court of Appeals may order that no party is entitled to costs when a public question is involved, as it was in this case.

Reversed and remanded.

1. ACTIONS — MOOTNESS.

A defendant's offer to provide incomplete relief to the plaintiff does not render an action moot.

2. TAXATION — FORECLOSURES — PURCHASE BY FORECLOSING GOVERNMENTAL UNIT — PUBLIC PURPOSES.

Under MCL 211.78m(1), a city, village, or township may purchase for a public purpose tax-foreclosed property located within its boundaries; the statute places no restrictions or conditions on what constitutes a public purpose and does not require that a public purpose be executed efficiently and expeditiously.

3. COSTS — APPEALS — PUBLIC QUESTIONS.

The Court of Appeals may order that no party is entitled to costs when a public question is involved (MCR 7.216[A][7], 7.219[A]).

*Warner Norcross & Judd LLP* (by *Kurt M. Brauer* and *Nicole L. Mazzocco*) for plaintiff.

*Peter Goodstein* for defendant.

Amici Curiae:

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Steven D. Mann* and *Don M. Schmidt*), for the Michigan Municipal League and the Michigan Townships Association.

Before: FORT HOOD, P.J., and BORRELLO and STEPHENS, JJ.

BORRELLO, J. Plaintiff appeals as of right the trial court's order denying its claim to declaratory and

mandamus relief following a bench trial. For the reasons set forth in this opinion, we reverse.

I. FACTS

The relevant facts are largely undisputed. Under the current statutory tax-foreclosure scheme, the state of Michigan has a right of first refusal to purchase any tax-foreclosed properties in the state. MCL 211.78m(1). If the state declines to purchase a property, the city, village, or township within whose limits the property is located may purchase it "for a public purpose." *Id.* The price of purchase (referred to as the "minimum bid") is set at what the minimum bid would be if the property were being auctioned off, which is determined by adding all taxes, interest, and fees owed on the property, so that the foreclosing governmental unit (FGU) breaks even on the property. MCL 211.78m(11). Before 1999, the state administered the tax-foreclosure scheme in every Michigan county. In 1999, the Legislature passed Public Act 123, which allowed counties to "opt in" and replace the state as the FGU, administering foreclosures within their jurisdictions. MCL 211.78(3), as amended by 1999 PA 123. On December 14, 2004, Bay County elected to name its treasurer, defendant, as its FGU.

Starting in 2005, defendant, as the FGU, began foreclosing on properties, but plaintiff did not seek to purchase any foreclosed properties until 2008. In 2008, defendant foreclosed on 16 parcels within plaintiff's limits. Plaintiff informed defendant that it wished to purchase four of the parcels and forwarded a check to defendant in the amount of the total of the minimum bids for the four parcels. Defendant determined that he was not obligated to sell the parcels to plaintiff unless he was satisfied that plaintiff would be returning the property to a position in which the property would

generate tax revenue. Following defendant's determination, officials of plaintiff and Bay County met to discuss the issue and come to an understanding, but they were not able to reach an agreement. On August 22, 2009, plaintiff filed this action against defendant for declaratory and mandamus relief. Plaintiff sought a declaration that its stated public purpose for the parcels was valid and a writ of mandamus directing defendant to transfer title to the parcels.

The properties sought by plaintiff were located at 105 West Thomas, 1216 Park Avenue, 606 Wilson, and 1906 Broadway. In its complaint, plaintiff stated that its public purpose was "to reduce the number of vacant tax reverted properties within [plaintiff]'s limits thereby minimizing the real and present dangers they present and to remove certain blighted conditions present on the subject properties" and that, through redevelopment of the properties, plaintiff "will ensure a healthy and growing tax base."

Both parties moved for summary disposition, with plaintiff arguing that there were only two conditions placed on the conveyance of property: that plaintiff tender the purchase price to the FGU and that plaintiff have a public purpose for the property. Plaintiff argued it was undisputed that both of these requirements were fulfilled; hence, defendant had a clear legal duty to convey the properties and plaintiff had a clear legal right to the performance of that duty. Defendant argued he had a statutory duty "to confirm that the municipality wants the requested property for a public purpose and that the municipality will be able to accomplish that purpose efficiently and expeditiously." He asserted that plaintiff had no public purpose for the Park Avenue, Broadway, and West Thomas properties and that plaintiff would not be able to achieve its public purpose for the Wilson property

efficiently and expeditiously. The trial court denied both parties' motions, and the case went to a bench trial.

At trial, defendant testified that it was unclear that plaintiff had a public purpose for the properties. Stephen Black, plaintiff's Deputy City Manager of Community Development, testified that plaintiff sought to acquire the Broadway property in order to tear down the building thereon and use the land as a parking lot for the adjacent property, which the city already owned. The Park Avenue property, according to Black, presented health and safety issues because it was "severely impacted by cat urine." Black said that foreclosure of the West Thomas property presented an opportunity to eliminate a multi-family home, noting that multi-family homes generate complaints in single-family areas. The city planned to either demolish the home or redevelop it. Defendant testified that the West Thomas property was a single-family, not a multi-family, dwelling. As for the Wilson property, Black testified it was a vacant lot that the city was considering conveying to Habitat for Humanity for it to build a new home.

The trial court found for defendant with respect to the Wilson and Broadway parcels, and for plaintiff with respect to the Park Avenue and West Thomas parcels. The parties agreed that, pending appeal, defendant would not "auction, sell, or otherwise dispose of" the Park Avenue, West Thomas, and Wilson properties and that it would not convey the Park Avenue and West Thomas properties to plaintiff. Plaintiff agreed not to seek the Broadway property.

Because defendant did not appeal the decision with respect to the Park Avenue and West Thomas properties, and because plaintiff agreed not to pursue its claim to the Broadway property, the only property at issue in this appeal is the Wilson property.

## II. MOOTNESS

Defendant argues on appeal that this claim is moot because he has offered to settle the suit by conveying the Wilson property to plaintiff. According to defendant, this removes any case or controversy between the parties. Defendant also argues that this does not fall into the mootness exception "carved out for those situations where . . . the issue is of public significance and likely to recur while also likely to evade judicial review." Defendant argues that it is speculative whether plaintiff will seek to purchase tax-foreclosed property from defendant again and that even if it does, it is only speculative that defendant will refuse to convey the property, and that even if both of these things occur, there will be opportunity for judicial review of the issue at that time.

Plaintiff denies the assertion that there is no case or controversy between the parties. Plaintiff argues that an offer to settle does not render a case moot unless the offer is accepted, and plaintiff has not accepted defendant's offer to convey the property in question. Plaintiff also notes that defendant has not conceded the legal points at issue in this case. Regarding the mootness exception for cases involving issues of public significance that recur but are likely to evade judicial review, plaintiff points out that, although it did not purchase any tax-foreclosed properties in 2009, it has regularly purchased tax-foreclosed properties in the past and certainly will do so in the future. And plaintiff argues that, if defendant's settlement offer renders the issue moot, there is a possibility that the issue will evade judicial review because defendant could simply convey the property every time plaintiff challenges its refusal to do so.

In *MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc*, 465 Mich 303; 633 NW2d 357 (2001), the Detroit City Council passed an ordinance

allowing the plaintiff to use a specified site to build a casino. *Id.* at 311-312 (CAVANAGH, J., dissenting). The defendant conducted a petition drive in an attempt to refer the ordinance, but the city clerk denied the petition on the ground that the ordinance was exempt from referendum. *Id.* at 312. The plaintiff sought a declaratory judgment that the ordinance was in fact exempt from referendum. *Id.* After the trial court granted the plaintiff's motion for summary disposition, the plaintiff went ahead with its casino construction, although the defendant had filed a claim of appeal in this Court. *Id.* at 312-313. Our Supreme Court addressed the issue of mootness in light of these developments. Justice CAVANAGH's dissent, which Justice KELLY joined, concluded that the defendant could not have the relief it sought, because even if the referendum were allowed and the ordinance defeated, the casino would remain as an allowed, prior nonconforming use of the land. *Id.* at 313-314. The majority rejected this conclusion, holding that "a party can not [sic] obliterate an opponent's appeal, on the basis of mootness, by so changing the status quo during the appeal . . . that [it] can then argue it is impossible to return to the situation that existed when the appeal was filed." *Id.* at 307.

This case presents the reverse situation—defendant seeks to render the appeal moot not by making it impossible for plaintiff to have the relief it seeks, but by giving plaintiff that relief. In *Oak Park & River Forest High Sch Dist 200 Bd of Ed v Ill State Bd of Ed,* 79 F3d 654, 659 (CA 7, 1996), the United States Court of Appeals for the Seventh Circuit held that a party's "strategic choice [not to 'cut its losses' by settling] does not make [a] lawsuit moot. A desire for a favorable precedent will not prevent a case from becoming moot, but the fact that such a desire figures in the decision not to abandon or settle a suit does not *make* the suit moot." (Citations

omitted; emphasis in original.) Relative to the issues presented in this case, we find the reasoning of the Seventh Circuit persuasive. Here, defendant has offered a settlement. We note that a full and complete settlement has yet to be reached and there continues to be, though with an offer of settlement on the table, an ongoing controversy.

Additionally, as plaintiff notes, even if it received the Wilson property, this would only satisfy the mandamus claim. Plaintiff also sought a declaratory judgment that its "stated public purpose is a valid public purpose under the laws of the State of Michigan." Because defendant will not and cannot give plaintiff such a declaration, there is still a controversy that this Court may decide. Although the nature of the action by which defendant seeks to render this case moot differs from that in *MGM Grand Detroit*, that case did hold that a defendant may not unilaterally render a case moot "by . . . changing the status quo during the appeal." *MGM Grand Detroit*, 465 Mich at 307. Similarly, the fact that plaintiff has not accepted defendant's offer to settle the suit by conveying the property to plaintiff because it desires a favorable precedent does not render the case moot. *Oak Park*, 79 F3d at 659. Accordingly, we hold that the issues presented in this case are not rendered moot by defendant's offer of settlement.

### III. PUBLIC PURPOSE UNDER MCL 211.78m(1)

Plaintiff argues that MCL 211.78m requires it to have a public purpose to purchase the Wilson property and that it sought the property to build a new home, which qualifies as economic development and therefore is a public purpose. Plaintiff further contends that defendant refused to convey the property because he did not believe that the public purpose could be accom-

plished " 'efficiently' and 'expeditiously.' " According to plaintiff, the statute only requires a public purpose and not these additional conditions. Conversely, defendant argues that the intent of MCL 211.78m will not be carried out unless properties are purchased by municipalities for a public purpose that can be efficiently and expeditiously carried out. Defendant points out that in other contexts, Michigan courts have interpreted "public purpose" to be more than just a speculative idea or a future possibility and have held that without a requirement of a detailed plan that can be expeditiously carried out, the "public purpose" requirement is illusory. According to the trial court, plaintiff's "proposal [regarding the Wilson property] does not promote the prosperity and general welfare of the residents of Bay City" and was "too speculative to constitute a proper public purpose."

"A trial court's decision regarding a writ of mandamus is reviewed for an abuse of discretion." *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). However, "whether defendant had a clear legal duty to perform and whether plaintiff had a clear legal right to the performance of that duty . . . are questions of law, which this Court reviews de novo." *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 438; 722 NW2d 243 (2006). Similarly, this Court reviews de novo the legal question of the interpretation of a statute. *People v Moore*, 470 Mich 56, 61; 679 NW2d 41 (2004); *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 739; 641 NW2d 567 (2002).

In *Tuggle v Dep't of State Police*, 269 Mich App 657, 668; 712 NW2d 750 (2006), this Court held that man-

damus is appropriate where (1) the plaintiff has a clear legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other legal or equitable remedy exists that might achieve the same result. See also *Lickfeldt v Dep't of Corrections*, 247 Mich App 299, 302; 636 NW2d 272 (2001); *Delly v Bureau of State Lottery*, 183 Mich App 258, 260-261; 454 NW2d 141 (1990).

MCL 211.78m(1) provides, in relevant part:

> Not later than the first Tuesday in July, immediately succeeding the entry of judgment under section 78k vesting absolute title to tax delinquent property in the foreclosing governmental unit, this state is granted the right of first refusal to purchase property at the greater of the minimum bid or its fair market value by paying that amount to the foreclosing governmental unit if the foreclosing governmental unit is not this state. If this state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase for a public purpose any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the minimum bid.

At trial, defendant seemingly conceded that plaintiff stated a public purpose for purchasing the Wilson property. On appeal, however, he argues that plaintiff's public purpose was unclear. He claims that plaintiff sought to obtain the properties "in order to minimize a 'real and present danger' and to remove 'blighted conditions on the subject properties.' " But according to the complaint, plaintiff sought the property "to reduce the number of vacant tax reverted properties within Bay City's limits thereby minimizing the real and present dangers they present and to remove certain blighted conditions present on the subject properties."

And the resolution passed by plaintiff authorizing it to acquire the properties reads, in relevant part, as follows:

> **Whereas**, the City of Bay City desires to acquire selected tax-reverted properties for the purpose of stimulating private investment through the redevelopment of each property; and
>
> **Whereas**, by improving and selling the various parcels, these economic development efforts will ensure a healthy and growing tax base . . . .

Thus, plaintiff demonstrated a public purpose beyond minimizing dangers and abating blight. Cf. *Kelo v City of New London*, 545 US 469, 484; 125 S Ct 2655; 162 NW2d 439 (2005) (rejecting the argument that economic development does not qualify as a public use in an eminent domain case and stating that "[p]romoting economic development is a traditional and long-accepted function of government").

However, defendant argues that the statutory scheme requires that the identified public purpose be capable of being efficiently and expeditiously carried out. Plaintiff asserts that the trial court's conclusion that plaintiff's plan to construct a new home on the Wilson property was too "speculative to constitute a proper public purpose" essentially incorporates the requirements that a public purpose must be executed efficiently and expeditiously. The terms "efficiently," "expeditiously," and "speculative" are not found in MCL 211.78m(1). The statute clearly and unambiguously provides that if the "state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase" the property "for a public purpose." MCL 211.78m(1). If the language in a statute is clear and unambiguous, this Court assumes that the Legislature intended its plain meaning, and the

statute must be enforced as written. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). This Court "may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id.* Similarly, this Court should not "judicially legislate by adding language to the statute." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 421; 565 NW2d 844 (1997). In *Advisory Opinion on Constitutionality of 1976 PA 295, 1976 PA 297*, 401 Mich 686, 696; 259 NW2d 129 (1977), our Supreme Court stated that "the determination of what constitutes a public purpose is primarily the responsibility of the Legislature, and . . . the concept of public purpose has been construed quite broadly in Michigan." Accordingly, it is not for the courts to read into MCL 211.78m(1) restrictions or conditions on what constitutes a public purpose that are not within the language of the statute itself and that essentially usurp the Legislature's authority to determine what constitutes a public purpose.

We note that while MCL 211.78m(1) does not contain any language requiring the property to be purchased for a public purpose that can be carried out efficiently and expeditiously, such language is found in MCL 211.78(1):

> The legislature finds that there exists in this state a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for delinquent taxes. Therefore, the powers granted in this act relating to the return of property for delinquent taxes constitute the performance by this state or a political subdivision of this state of essential public purposes and functions.

The reference to "efficient and expeditious return to productive use" in this legislative finding is not a constraint on the public purpose identified by a city,

village, or township purchasing tax-delinquent property under MCL 211.78m(1). Rather, it is a statement of the purposes of the tax-reversion statutory scheme. Due to the perception of the Legislature that the existing statutory provisions addressing reverted properties were inefficient, the Legislature revamped the General Property Tax Act in 1999 PA 123 in order to effectuate "the efficient and expeditious return to productive use of property returned for delinquent taxes."[1] This is the public purpose of the GPTA, not the public purpose of a city, village, or township purchasing tax-delinquent property.[2]

It is not the prerogative of this Court to "judicially legislate by adding language to [a] statute." *Empire Iron*, 455 Mich at 421. In this case, the trial court essentially imposed a constraint on what constitutes a public purpose that is not found within the language of MCL 211.78m(1). Plaintiff's stated purpose was to improve and sell the property. Whether it could do so efficiently and expeditiously was relevant to plaintiff's ability to carry out its purpose, but was not relevant to

---

[1] The legislative analysis prepared for 1999 PA 123 states that the then current "tax delinquent property reversion process takes about six years to complete." House Legislative Analysis, HB 4489, July 23, 1999, p 1. In order to address this delay in returning tax-delinquent property to tax-current status, while still honoring the rights of property owners, the legislation revamping the tax-reversion process was proposed. *Id.*, p 2. While the use of legislative analysis has been criticized as being unpersuasive in terms of statutory construction, such analyses do have probative value in certain circumstances, see, e.g., *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 170; 744 NW2d 184 (2007), and continue to be cited in cases involving statutory interpretation, see, e.g., *Bush v Shabahang*, 484 Mich 156, 174 n 29; 772 NW2d 272 (2009).

[2] In some ways, this is an example of the classic fallacy of equivocation. The term "public purpose" is being used in two different, albeit related, ways in MCL 211.78(1) and MCL 211.78m(1).

the question whether plaintiff was purchasing the property "for a public purpose" as required by MCL 211.78m(1).

We hold that the trial court erred in finding for defendant with respect to the Wilson property by adding conditions on a "public purpose" that are not found within the clear and unambiguous language of MCL 211.78m(1). Given the evidence presented, including defendant's admission at trial that plaintiff had stated a public purpose, there was no basis for the trial court to find in favor of defendant regarding the Wilson property. Because the trial court added language to the statute to arrive at its conclusions, it abused its discretion in denying mandamus relief to plaintiff.

IV. COUNTY TREASURER'S AUTHORITY TO MAKE AN INDEPENDENT
ASSESSMENT OF PUBLIC PURPOSE UNDER MCL 211.78m(1)

Plaintiff argues that MCL 211.78m(1) gives no authority to defendant to question plaintiff's determination of public purpose. According to plaintiff, such a determination is traditionally considered a legislative function and is thus properly left to plaintiff, as a legislative body. Plaintiff contends that unless the statute says otherwise, the power to review plaintiff's decision lies in the courts, the branch of government that traditionally reviews actions for their consistency with the laws. Finally, plaintiff argues that the proper course of action would be for defendant to obey the statute's command that it sell the property to plaintiff. If it later becomes evident that plaintiff does not have a public purpose for the property, a party with standing could bring suit to challenge the purchase of the property.

Conversely, defendant argues that it does not usurp the function of the courts for an FGU to review a municipality's determination of public purpose. Defen-

dant contends that if the courts can review the FGU's determination, judicial review is still possible. Additionally, defendant argues that he is in the best position to determine which properties to allow municipalities to purchase at the minimum bid and which properties to put to public auction to best manage and maintain the integrity of the delinquent tax revolving fund.

As noted above, MCL 211.78m(1) requires property purchased by a municipality under the statute to be purchased "for a public purpose." The statute does not, however, specify who makes the determination whether a purpose constitutes a public purpose, nor does it specify what body, if any, may review that determination.

Although defendant claims that the statute empowers him to review plaintiff's determination of public purpose, he makes no argument in support of this assertion. His argument, instead, is that it will benefit the entire county if he is allowed to decide which properties are sold to municipalities and which go to auction. But this argument does not relate to the question of public purpose—instead, defendant's argument is that he should have general discretion to sell or not sell properties to municipalities on the basis of what most benefits the county.

Plaintiff argues that its council is the proper body to determine whether there is a public purpose, because it consists of " 'the elected representatives of the people.' " *Horton v Kalamazoo*, 81 Mich App 78, 81; 264 NW2d 128 (1978), quoting *Gregory Marina, Inc v Detroit*, 378 Mich 364, 394; 144 NW2d 503 (1966) (opinion by T. M. KAVANAGH, C.J.). Defendant points out that he is also an elected representative, elected by a larger constituency than plaintiff's council.

More to the point, however, is plaintiff's separation of powers argument. As noted previously in this opinion, our Supreme Court has stated that "the determination of what constitutes a public purpose is primarily the responsibility of the Legislature." *1976 PA 295*, 401 Mich at 696; accord *Gregory Marina, Inc*, 378 Mich at 394-395 (opinion by T. M. KAVANAGH, C.J.) (noting that determination of public purpose is a legislative, not a judicial, question); *Advisory Opinion on Constitutionality of 1986 PA 281*, 430 Mich 93, 129-130; 422 NW2d 186 (1988) (stating that Michigan has "recognized a liberal version of the public purpose doctrine"). The determination of public purpose is an essentially legislative function, see MCL 211.78, and plaintiff's council is a legislative body. The review of an action of the Legislature for compliance with the law is an essentially judicial function. The language of the portion of the statute at issue contemplates no discretionary or decision-making role for any executive body. Indeed, the FGU's role in a city's purchase of property is essentially administrative, as well as mandatory: "If property is purchased by a city, village, township, or county under this subsection, the [FGU] *shall convey* the property to the purchasing city, village, township, or county within 30 days." MCL 211.78m(1) (emphasis added). The statute's use of the word "shall" indicates a mandatory act, not a permissive one. *People v Francisco*, 474 Mich 82, 87; 711 NW2d 44 (2006).

In keeping with precedent, we hold that the determination of a proper purpose for the purchase of tax-delinquent property is a legislative function, vesting such determinations as arose in this case with plaintiff's council. Furthermore, because MCL 211.78m(1) creates a mandatory legal duty on defendant's part to sell the property to plaintiff, granting him no discretion to decide not to sell such property, the statute does not

empower a county treasurer such as defendant to make an independent determination as to a municipality's professed "public purpose." Pursuant to MCL 211.78m, the selling of property is a mandatory act by defendant, not a discretionary one. For these reasons, the trial court erred to the extent it implicitly held that defendant had a right to review plaintiff's determination of public purpose, and it abused its discretion by denying plaintiff mandamus relief.

Reversed and remanded. No costs are awarded to either party, a public question being involved. MCR 7.216(A)(7) and MCR 7.219(A).

FORT HOOD, P.J., and STEPHENS, J., concurred with BORRELLO, J.