TAYLOR v BLUE CROSS AND BLUE SHIELD OF MICHIGAN

Docket Nos. 156767, 156806. Submitted October 13, 1993, at Marquette. Decided June 20, 1994, at 9:10 A.M.

Robert E. and Debra Taylor brought an action in the Marquette Circuit Court against Blue Cross and Blue Shield of Michigan, their medical insurer through Robert Taylor's employment with the County of Marquette, seeking a declaration that high dose chemotherapy with autologous bone marrow transplant as a treatment for Debra Taylor's breast cancer is not excluded by a provision in the defendant's policy that states that benefits for care, services, or devices that are experimental or research in nature are not covered. The Taylors also alleged that the refusal of Blue Cross to pay for the treatment constituted a breach of contract and intentional infliction of emotional distress, and they sought damages for physical and mental injuries allegedly caused by the breach of contract and for the emotional distress allegedly intentionally inflicted by Blue Cross. Marquette County, which had provided the Taylors a letter of credit to enable them to pay for the treatment, intervened as a plaintiff in the action after the county entered into a subrogation agreement with the Taylors with respect to their rights relative to the count seeking a declaration concerning insurance coverage. The court, John D. Payant, J., entered a judgment for the plaintiffs and ordered Blue Cross to pay for the disputed treatment, determining that the policy exclusion was ambiguous and that the treatment was not experimental or research in nature. The court granted summary disposition for Blue Cross with respect to the claims for damages for breach of contract and intentional infliction of emotional distress, and denied the plaintiffs' request for attorney fees. Appeals were filed by both Blue Cross and the Taylors, and the appeals were consolidated.

The Court of Appeals *held:*

1. the terms "experimental" and "research in nature," which were undefined in the policy, are susceptible to various interpretations and therefore are ambiguous.

2. The trial court's determination that the treatment at issue is not experimental or research in nature was supported by

medical testimony indicating its efficacy as a treatment for breast cancer.

3. The trial court did not abuse its discretion by refusing to permit Blue Cross to question Debra Taylor about her reasons for dismissing an earlier lawsuit against Blue Cross. Such an inquiry would have revealed information protected by the privilege covering communications between Debra Taylor and her attorney.

4. The trial court did not abuse its discretion in allowing the plaintiffs to call a rebuttal witness after the trial had concluded.

5. The Taylors did not lose standing to pursue this action by subrogating their rights with regard to the count seeking a declaration because they still had a personal stake in the claims for breach of contract and intentional infliction of emotional distress and those claims depended on a ruling in their favor with regard to the question of insurance coverage.

6. The Taylors are not entitled to damages for physical or mental injury resulting from breach of contract in the absence of proof of tortious conduct existing independently of the breach.

7. Wilful or bad-faith failure to pay a contractual obligation does not amount to outrageous conduct that is actionable for intentional infliction of emotional distress. Bad-faith refusal to pay an insurance claim is not a recognized tort in Michigan.

8. The plaintiffs are not entitled to attorney fees in the absence of a statute or court rule authorizing an award of those fees or in the absence of a recognized exception to the requirement of statutory or court rule authorization.

Affirmed.

*Andrews, Fosmire, Solka & Stenton, P.C.* (by *M. Sean Fosmire*), for Robert and Debra Taylor.

*David A. Payant,* for County of Marquette.

*Daniel W. McKelvey,* for Blue Cross and Blue Shield of Michigan.

Before: SAWYER, P.J., and GRIFFIN and R. M. PAJTAS,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

R. M. Pajtas, J. The present action arose from defendant's refusal to cover plaintiff Debra Taylor's treatment of high dose chemotherapy with autologous bone marrow transplant for her Stage IV metastatic breast cancer. In these consolidated appeals, plaintiffs Robert and Debra Taylor appeal as of right from the trial court's September 9, 1992, order granting defendant's motion for summary disposition and dismissing their claim for damages for physical and mental injury based on breach of contract and intentional infliction of emotional distress. Plaintiffs also appeal from the trial court's denial of attorney fees, arguing that they were entitled to the fees for prevailing on their action against defendant. We affirm.

Defendant appeals as of right from the trial court's September 9, 1992, judgment in favor of plaintiffs and finding that the cancer treatment for Debra Taylor was not experimental or research in nature, and therefore not excluded from the health insurance policy. The court ordered defendant to reimburse plaintiffs for the costs of the cancer treatment, which amounted to $144,000. We affirm.

The facts of this case are not disputed. Robert Taylor is an employee of intervening plaintiff Marquette County and is covered under a medical insurance policy issued by defendant to the county. Debra Taylor was also covered for medical insurance through her husband under the same policy. In July 1987, Debra was diagnosed with breast cancer at the age of thirty-five. In August, a mastectomy was performed at a hospital affiliated with the Mayo Clinic. Most of the auxiliary lymph nodes from the removed tissue tested positive for cancer, indicating that the cancer would develop into metastatic cancer that spreads throughout the

body. The breast cancer was classified as adenocarcinoma, grade 4.

In 1989, Debra's oncologist contacted the M.D. Anderson Bone Marrow Transplant Center in Houston, Texas, regarding the possibility of treating Debra with a procedure called high dose chemotherapy with autologous bone marrow transplant (HDC-ABMT). HDC-ABMT is a procedure by which bone marrow stem cells are extracted from the patient's body and frozen in storage. The patient then receives massive doses of chemotherapy to destroy the cancer.[1] After the chemotherapy is completed, the stored bone marrow is transfused into the patient. HDC-ABMT had been a state-of-the-art treatment for leukemia and Hodgkin's disease for many years. It began to be used in the late 1980s for women who were in the late stages of breast cancer.

Upon inquiry, defendant informed the Taylors that the HDC-ABMT treatment was excluded by the policy of insurance under the following provision:

> The following services are not covered by this contract:
> Benefits for care, services, supplies or devices which are experimental or research in nature.

Defendant asserted that the treatment was experimental or research in nature. Because defendant refused to cover the costs, Debra did not receive the treatment at that time.

In March 1991, the doctors discovered cancer in the lumbar and thoracic areas of Debra's spine. She then applied for HDC-ABMT at the Fred Hutchinson Cancer Research Center in Seattle, Washing-

---

[1] Some bone marrow is removed because the high doses of chemotherapy will kill the red and white blood cells and platelets in the marrow.

ton. The center accepted Debra as a candidate for the treatment, but informed her that it required insurance coverage or an ability to pay. The estimated cost for the treatment ranged from $144,000 to $200,000. Defendant again denied coverage. Thereafter, Marquette County issued a letter of credit up to $195,000 to pay for the procedure.

In May 1991, Debra Taylor arrived at the center for HDC-ABMT. A bone marrow biopsy revealed that over forty percent of her bone marrow was cancerous. Because the cancer level was considered too high for harvesting and reinfusion, the doctors decided to harvest peripheral blood stem cells, which are contained in the bone marrow and the blood. These cells repopulate the bone marrow and produce red and white blood cells and platelets. In September 1991, Debra returned to the center for intensive chemotherapy and reinfusion of peripheral blood stem cells.

On April 21, 1991, the Taylors filed an action against defendant, seeking a declaratory judgment that the treatment was covered under the insurance policy. Under counts II and III, they requested money damages for pain, suffering, and emotional distress as a result of defendant's actions in denying coverage. The Taylors subsequently agreed to subrogate their claim under count I against defendant to the county, which then intervened in the action.

Hearings regarding count I were held on October 9 and November 1 of 1991. At the hearing, Dr. William Vaughn testified on behalf of plaintiffs, and Dr. John Burrows testified on behalf of defendants. The majority of testimony was admitted through the depositions of Debra Taylor and several doctors.

## I. DOCKET NO. 156806

### A

Defendant contends that the trial court clearly erred in finding that the exclusion was ambiguous and that HDC-ABMT was not experimental or research in nature, and therefore not excluded by the policy. We disagree.

This Court's review of a declaratory judgment is conducted de novo. *De Bruyn Produce Co v Romero,* 202 Mich App 92, 98; 508 NW2d 150 (1993); *Englund v State Farm Mutual Autombile Ins Co,* 190 Mich App 120, 121; 475 NW2d 369 (1991). However, we will not reverse a trial court's factual findings unless they are clearly erroneous. *DeBruyn, supra.*

In determining whether an insurance policy applies, this Court must first determine whether the policy is clear and unambiguous on its face. In doing so, the insurance contract should be read and interpreted as a whole. *Fragner v American Community Mutual Ins Co,* 199 Mich App 537, 540; 502 NW2d 350 (1993). Exclusions are to be read with the insuring agreement and independent of other exclusions. *Id.* Exclusionary clauses are to be strictly construed against the insurer. *Id.; Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 181; 468 NW2d 498 (1991).

An insurance contract is clear if it fairly admits of but one interpretation. *Id.; Fragner, supra.* If an insurance contract's language is clear, its construction is a question of law for the court. *Id.* An insurance contract is ambiguous if, after reading the entire contract, its language reasonably can be understood in differing ways. *Id.* Furthermore, ambiguities in an insurance policy drafted by an insurer are to be construed against the insurer and in favor of the insured. *Id.*

In support of its claim that the insurance policy was not ambiguous and that the HDC-ABMT treatment is clearly experimental or research in nature, defendant relies solely upon *Dahl-Eimers v Mutual of Omaha Life Ins Co,* 812 F Supp 1193 (ND Fla, 1992). In *Dahl-Eimers,* the policy covered medically necessary services, and a medically necessary service was defined in the policy as one that

> (a) is appropriate and consistent with the diagnosis in accord with accepted standards of community practice; (b) *is not considered experimental*; and (c) could not have been omitted without adversely affecting the insured person's condition or the quality of medical care. [*Id.,* p 1195. Emphasis added.]

The district court held that the term "experimental" was not ambiguous and that HDC-ABMT treatments were experimental. *Id.,* pp 1197-1198.

The district court's decision, however, was reversed by the Eleventh Circuit Court of Appeals in *Dahl-Eimers v Mutual of Omaha Life Ins Co,* 986 F2d 1379 (CA 11, 1993). In holding that the policy was ambiguous, the Eleventh Circuit Court stated:

> The policy does not define the term "experimental." The plain language of subparagraph (b) . . . does not indicate who will determine whether a proposed treatment is considered experimental. Further, it also omits standards for how that determination will be made. Thus, the contract phrase "considered experimental," without more, gives rise to a genuine uncertainty about who will determine whether a particular treatment is experimental and how that determination will be made. Indeed, even Mutual of Omaha concedes that there could be more than one source of such a determination. Ambiguity in the contract terms arises from the contract's silence on definitions.

The absence of a definition does not create ambiguity per se, as noted above. Nonetheless, the insurance company cannot then claim the narrow and favorable interpretation that its determination, alone, is controlling. In this case, Mutual of Omaha took upon itself the determination of whether the proposed treatment is considered experimental. While that is a reasonable interpretation of the policy language, it is not the only reasonable interpretation. It would also be reasonable to allow the determination of what is considered experimental to be made, for example, by the relevant medical specialists, according to generally accepted standards of community practice, or by a national association. [*Id.,* p 1382.]

Other federal courts have found that the term "experimental" was ambiguous. *Pirozzi v Blue Cross—Blue Shield,* 741 F Supp 586, 589-590 (ED Va, 1990); *Johnson v District 2 Marine Engineers Beneficial Ass'n,* 857 F2d 514 (CA 9, 1988).[2]

In this case, the trial court found that the terms "experimental" and "research in nature" were ambiguous because each term reasonably could be understood in different ways:

A reasonable person could interpret "experimental" to mean a medical procedure which is designed solely for testing a hypothesis without contemplation that any benefit whatsoever would be gained by the patient or it could mean a medical procedure which is designed primarily for providing a benefit for the patient but which would have the side effect of testing a hypothesis. Likewise,

---

[2] Other cases involved exclusions that specifically provided the insurer would make the determination whether the procedure was "experimental." *Kekis v Blue Cross & Blue Shield of Utica-Watertown, Inc,* 815 F Supp 571 (ND NY, 1993); *Kulakowski v Rochester Hosp Service Corp,* 779 F Supp 710 (WD NY, 1991). In these cases, the courts noted that the insurer's decisions that HDC-ABMT was experimental for treatment of breast cancer were reviewable only to determine whether they were arbitrary and capricious.

"research in nature" could be interpreted by a reasonable person as a procedure which is designed to collect data for further study without contemplation of any benefit to a patient or it reasonably could be interpreted to mean a procedure which is designed primarily to provide a benefit for a patient but that information and data will be collected and retained for further study.

As noted by the trial court, not only did the policy not define the terms, but the medical experts had divergent definitions for each term. Moreover, the parties' definitions, noted above, are reasonable interpretations of the terms. Therefore, we agree with the trial court that the terms are ambiguous.

Next, defendant argues that the trial court erred in finding that the treatment was not experimental or research in nature. We disagree.

Plaintiffs' medical experts opined that the modified HDC-ABMT procedure performed on Debra Taylor was neither experimental nor research in nature, and defendant's experts opined that the treatment was experimental and research in nature. Plaintiff's experts were clinical oncologists who treated breast cancer patients and recognized HDC-ABMT as an effective therapy for young breast cancer patients. Two of defendant's experts, Dr. Seymour Adelson and Dr. Ronald Herberman, were not clinical oncologists who regularly treated cancer patients.

The trial court found the testimony of Dr. Daniel Arnold and Dr. Aaron Scholnick, Debra Taylor's treating oncologists who referred her to the Fred Hutchinson Center, the most persuasive. The doctors testified that the modified HDC-ABMT was truly the only way she could become free of cancer for at least two or three years. They also opined that if she chose conventional chemotherapy, her life expectancy would have been measured by

months. Although the court acknowledged that research was an underlying purpose of the procedure, it found that the primary purpose of the procedure was to provide Debra her only opportunity to become free of cancer for a substantial period.

Furthermore, in November 1991, a committee of the Michigan Society of Hematology and Oncology issued a position paper that recognized HDC-ABMT as an effective form of therapy for breast cancer. Notably, Dr. John Burrows, the founder of the organization, testified on defendant's behalf. The court found that twenty to thirty percent of Stage IV breast cancer patients receiving HDC-ABMT have a long-term survival rate of at least two or three years free of cancer with no need for additional treatment. On the other hand, the Stage IV breast cancer patients who receive conventional chemotherapy have a cancer-free outlook of zero percent.

This Court finds that HDC-ABMT is neither experimental nor research in nature for purposes of the exclusion in the policy issued by defendant. Although defendant has listed several reasons supporting its conclusion that HDC-ABMT is experimental or research in nature, we find them to be unpersuasive. For example, the fact that HDC-ABMT procedures are conducted only at research institutions would not indicate that the procedure is experimental or research in nature in light of the fact that these facilities also conduct numerous medically accepted operations. Equally unpersuasive is the fact that the information that was gathered regarding Debra Taylor's procedure will be shared with other researchers or that the procedure was conducted under a protocol. We note that defendant could have inserted these factors in defining "experimental" or "research in nature" in the policy, but failed to do so.

In light of the medical testimony that HDC-ABMT is an effective form of therapy for breast cancer and that breast cancer patients who earnestly seek the treatment experience better prognoses than those who choose conventional treatments, we find that the trial court did not err in finding that HDC-ABMT is not experimental or research in nature and thus was not excluded by the policy. Accordingly, defendant was required to cover the costs of the treatment.

**B**

Next, defendant argues that the trial court erred in refusing to allow it to pursue Debra Taylor's reason for dismissing her initial lawsuit against it. However, defendant did not provide the transcript of the deposition of Debra Taylor at which the question was posed and objections were placed on the record. The issue is considered abandoned on appeal. *Admiral Ins Co v Columbia Casualty Ins Co,* 194 Mich App 300, 304-305; 486 NW2d 351 (1992).

Furthermore, this Court finds that Debra Taylor's reason for dismissing the previous lawsuit was protected by the attorney-client privilege, which attaches to communications made by a client to the attorney acting as a legal adviser and made for the purpose of obtaining legal advice. *Grubbs v K mart Corp,* 161 Mich App 584, 589; 411 NW2d 477 (1987). See also *People v Nash,* 110 Mich App 428, 444; 313 NW2d 307 (1981), modified on other grounds 418 Mich 196; 341 NW2d 439 (1983) (advice secured by a client from his attorney is privileged). The objection made by plaintiffs' counsel indicated that the lawsuit was dismissed after consultations between Debra Taylor and her attorney, and the answer would have revealed

privileged communication and advice. We find no abuse of discretion.

### C

Defendant next contends that the trial court abused its discretion by allowing plaintiffs to call a rebuttal witness after the trial concluded. We disagree.

The scope of rebuttal in civil cases is within the sound discretion of the trial court. *Argenta v Shahan,* 135 Mich App 477, 486; 354 NW2d 796 (1984), reversed on other grounds 424 Mich 83; 378 NW2d 470 (1985). Plaintiffs deposed Dr. Adelson, defendant's expert, during discovery and three weeks before trial. At the second deposition, Dr. Adelson discussed certain issues for the first time. Dr. Silver's testimony addressed and disputed these issues. This Court finds the court did not abuse its discretion by allowing the deposition testimony of Dr. Silver to rebut the testimony of Dr. Adelson. *Id.,* p 487.

### D

Defendant finally contends that the court should have dismissed Debra and Robert Taylor from the lawsuit after they subrogated their claim against it to the County of Marquette. We disagree.

Standing is the legal term used to denote the existence of a party's interest in the outcome of the litigation and that will assure sincere and vigorous advocacy. *Allstate Ins Co v Hayes,* 442 Mich 56, 68; 499 NW2d 743 (1993); *Detroit Fire Fighters Ass'n v Detroit,* 199 Mich App 129, 131; 501 NW2d 202 (1993). To have standing, a plaintiff must demonstrate a legally protected interest that is in jeopardy of being adversely affected and must

allege a sufficient personal stake in the outcome of the dispute to ensure that the controversy to be adjudicated will be presented in an adversarial setting that is capable of judicial resolution. *Id.,* pp 131-132. Generally, a plaintiff shows a personal stake in a lawsuit by demonstrating injury to the plaintiff or the plaintiff's property. *Id.,* p 132.

Unquestionably, the Taylors had a personal stake in the lawsuit as a result of their prolonged struggle to obtain treatment for Debra's cancer. Furthermore, they had a substantial interest in adjudicating the matter because their claim for damages under counts II and III of their complaint was contingent upon obtaining a favorable judgment against defendant under count I. The subrogation agreement with Marquette County also did not cover the total potential costs of Debra's treatment, but only up to $195,000. Accordingly, this Court finds that the Taylors had standing to remain in the lawsuit.

## II. DOCKET NO. 156767

After rendering its decision regarding count I, the trial court granted defendant's motion for summary disposition and dismissed plaintiffs' remaining counts. The court also ruled that plaintiffs were not entitled to damages for physical injury as a result of defendant's breach of contract and were not entitled to attorney fees for prevailing.

Plaintiffs first contend that the court erred in not allowing them to recover damages for mental anguish, emotional distress, and physical injury resulting from the progression of Debra's cancer without the HDC-ABMT treatment. Plaintiffs argue

that these damages are available and arose from defendant's breach of contract. We disagree.

Damages for mental distress are not recoverable in a breach of contract action absent allegation and proof of tortious conduct existing independent of the breach of contract. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980); *Crossley v Allstate Ins Co,* 155 Mich App 694, 699; 400 NW2d 625 (1986). Although the process that plaintiffs endured over the years was tragic, there is no claim that defendant acted in a tortious manner independent of its breach of contract. Moreover, we do not believe that this is the type of contractual breach that could support damages for mental distress or physical injury. See *Shikany v Blue Cross & Blue Shield of Michigan,* 134 Mich App 603; 350 NW2d 910 (1984).

Plaintiffs also claim the trial court erred in dismissing their claim of intentional infliction of emotional distress. We disagree. The elements of a prima facie case of intentional infliction of emotional distress are (1) extreme or outrageous conduct, (2) which intentionally and recklessly, (3) causes extreme emotional distress. *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985); *McCahill v Commercial Union Ins Co,* 179 Mich App 761, 768; 446 NW2d 579 (1989). Failure to pay a contractual obligation does not amount to outrageous conduct, even if it is wilful or in bad faith. *Lawrence v Will Darrah & Associates, Inc,* 194 Mich App 635, 638; 487 NW2d 820 (1992), reversed on other grounds 445 Mich 1 (1994); *McCahill, supra.* At best, plaintiffs' claim lies in the tort of bad-faith refusal to pay an insurance claim, an action that is not recognized by the courts of this state. See *Runions v Auto-Owners*

*Ins Co,* 197 Mich App 105, 110; 495 NW2d 166 (1992).[3]

Finally, plaintiffs argue that they should be permitted to recover attorney fees from defendant, although there is no statutory authorization, because of the unusual circumstances of the case. We disagree. The general rule in Michigan prohibits an award of attorney fees as an element of cost or damages absent express authorization by statute, court rule, or other recognized exception. *Swickard v Wayne Co Medical Examiner,* 196 Mich App 98, 101; 492 NW2d 497 (1992); *Dunn v Emergency Physicians Medical Group, PC,* 189 Mich App 519, 523; 473 NW2d 762 (1991). Accordingly, the trial court properly denied plaintiffs' request for attorney fees.

Affirmed.

---

[3] Although some jurisdictions have applied the tort of intentional infliction of emotion distress to a bad-faith refusal to pay insurance benefits where the same conduct also constitutes a breach of contract, *Green v State Farm Fire & Casualty Co,* 667 F2d 22 (CA 9, 1982); *Morgan v American Family Life Assurance Co of Columbus,* 559 F Supp 477 (WD Va, 1983); *Eckenrode v Life of America Ins Co,* 470 F2d 1 (CA 7, 1972); *Fletcher v Western Nat'l Life Ins Co,* 10 Cal App 3d 376; 89 Cal Rptr 78 (1970), this Court declines to do so in this case.