# STATE OF MICHIGAN

# COURT OF APPEALS

JULIETTE BONANNO,

        Plaintiff-Appellant/Cross-Appellee,

v

HARPER-HUTZEL HOSPITAL also known as
LEGACY HHH, DETROIT MEDICAL CENTER
also known as LEGACY DMC, MATTHEW
SCHRECKINGER, M.D., and ORTHOPEDIC
INSTITUTE OF MICHIGAN PLLC,

        Defendant-Appellees,

and

WAYNE STATE UNIVERSITY PHYSICIAN
GROUP, UNIVERSITY PHYSICIAN GROUP,
and JAYANT JAGANNATHAN, M.D.,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
August 28, 2018

No.  334541
Wayne Circuit Court
LC No.  14-007186-NH

Before:  CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff Juliette Bonanno appeals as of right the circuit court's denial of her Motion for JNOV and New Trial after the entry of a Judgment of No Cause of Action.  Defendants Wayne State University Physician Group, University Physician Group, and Dr. Jayant Jagannathan filed a conditional cross-appeal of the circuit court's denial of defendants' MCR 2.116(C)(7) motion for summary disposition based on statute of limitations. We affirm the Judgment of No Cause of Action and the trial court's decision to deny plaintiff JNOV and a New Trial and do not reach the issues on the cross-appeal as they are moot.

## I.  BACKGROUND

Plaintiff suffered from juvenile onset scoliosis which did not begin to cause her any discomfort until adulthood at which time it became so painful that she decided to have it

-1-

surgically corrected. She underwent a 12-hour surgery in an effort to straighten her spine. During the procedure, screws were inserted into the thoracic vertebrae or pedicle bone at T4 through T9. The surgery resulted in some correction to plaintiff's spinal curvature, but also caused a great deal of postoperative pain.

Plaintiff subsequently sought treatment for her pain from another surgeon who informed her that some of the surgically implanted pedicle screws had traversed the spinal canal, and were impinging her spinal cord. The surgeon suggested that this was a possible cause of her pain. According to plaintiff, that doctor advised her to have the screws removed. She also reported that the physician advised her to contact counsel. Plaintiff underwent a second surgery to have the screws removed, but continued to experience pain.

On June 3, 2014, plaintiff filed a medical malpractice complaint against defendants Doctor Jagannathan and resident Schreckinger who performed her scoliosis surgery, and against their employers, defendants Orthopedic Institute of Michigan, P.L.L.C., Wayne State University Physician Group, University Physician Group, Harper-Hutzel Hospital, Legacy HHH, Detroit Medical Center, and Legacy DMC. Plaintiff alleged they committed negligence and medical malpractice in the placement of her pedicle screws. The case proceeded to a jury after the defendants were unsuccessful in having plaintiff's complaint summarily dismissed under MCR 2.116(C)(7) based on the statute of limitations.

Several experts testified on the issue of the standard of care. The defendant Dr. Jagannathan acknowledged that the left T4 and T5 pedicle screws were malpositioned or "suboptimally" placed, but testified that the mere placement of the screws in the spinal canal was not a breach of the standard of care. He testified that it was not uncommon for a screw to traverse to the lung or the spinal canal when placed in the upper thoracic spine because the smallest approved pedicle screw was larger than the actual pedicle bone. He also testified that according to the "published literature up to 70 percent of thoracic screws can be extrapedicular" meaning "outside the pedicle." Defendants' expert Dr. Steven Rapp also testified that the T4 and T5 screws were in the spinal canal and that their placement did not amount to a breach of the standard of care. He too testified that misplaced screws occurred often and a screw may not end up where the surgeon intended, especially in plaintiff's case where her spine angulated and rotated. Plaintiff's expert Dr. Frank Kevin Yoo agreed that pedicle screws were often misplaced and protruded into the spinal canal and that the standard of care was "to do the best you can as a spine surgeon." However, he opined that the standard of care was breached in this case where the misplacement was "terribly wrong," and that it was a breach of the standard of care to leave the screws in the canal. Plaintiff's other expert Dr. Mark Stern testified that a pedicle screw should "never" go through a spinal canal and to do so would be "a significant breach of the normal placement of a pedicle screw."

The jury found that defendants were not professionally negligent, and also, found that defendants' professional negligence was not a proximate cause of the injuries sustained by plaintiff. The trial court denied plaintiff's motion for JNOV and new trial. This appeal followed.

## II. PLAINTIFF'S MOTION FOR JNOV AND NEW TRIAL

## A. STANDARD OF REVIEW

"We review a trial court's decision with regard to a motion for JNOV de novo." *Morinelli v Provident Life & Acc Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2000). "When deciding a motion for JNOV, the trial court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the facts presented preclude judgment for the nonmoving party as a matter of law." *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997). "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Morinelli*, 242 Mich App at 260-261.

A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *Poirier v Grand Blanc Tp*, 192 Mich App 539, 547; 481 NW2d 762 (1992). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 164; 807 NW2d 892 (2011). "In deciding a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party." *Morinelli*, 242 Mich App at 261. Like the review of a JNOV motion, "this Court views the evidence in a light most favorable to the nonmoving party, giving due deference to the trial court's decision because of its ability to evaluate the credibility of the testimony and evidence presented to the jury." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 546; 854 NW2d 152 (2014).

## B. ANALYSIS

"In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003). "Expert testimony is required to establish the applicable standard of care and to demonstrate that the defendant breached that standard." *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 294; 739 NW2d 392 (2007). The standard of practice for a surgeon is, "what a reasonably prudent surgeon would do" or would not have done under the same or similar circumstances. *Locke v Pachtman*, 446 Mich 216, 225; 521 NW2d 786 (1994).

Plaintiff argues the court erred in denying her motion for JNOV or a new trial because the jury's finding that the standard of care was not breached was against the great weight of the evidence. Plaintiff's argument is based upon her assertion that the evidence presented on the breach of the standard of care was overwhelming. She argues that the great weight of the evidence in this case established that defendants breached the standard of care by placing the left T4 and T5 pedicle screws in the spinal canal, far away from the pedicle, and compressing the spinal cord. After a review of all of the evidence on the breach of the standard of care, we find no error in the court's denial of the plaintiff's prayer for relief.

Contrary to plaintiff's argument, the testimony on the breach of the standard of care was not unanimous. Instead, the testimony was unanimous that the pedicle screws entered the spinal canal, and disputed as to whether placement in the canal breached the standard of care. The jury

was asked to determine whether a reasonably prudent spine surgeon would place thoracic pedicle screws in the spinal canal. Defendant Dr. Jagannathan and defense expert Dr. Rapp testified to the difficulty of placing screws in the thoracic spine and plaintiff's spine in particular, because it was so contorted from scoliosis. They testified that pedicle screws in the thoracic spine were often outside of the pedicle bone because the size of the screw was larger than the size of the bone, and ended up in either the spinal canal or lung because of their proximity to the thoracic spine. While plaintiff's expert Dr. Yoo agreed that pedicle screws were not always placed properly, he opined, like Dr. Stern, that it was a breach of the standard of care for the screws to be in the spinal canal as they were in this particular plaintiff. This jury was presented with conflicting but competent evidence on both the standard of care and whether that standard was breached. As discussed below, there were otherwise no errors in the admission of evidence. Further, no error occurred in either jury instruction or argument. It was the jury's province to determine the credibility and weight of the experts' testimony. *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). The jury resolved the issues in the defendants' favor and the trial court's rejection of the motion for JNOV or a new trial was not outside the range of principled decisions.

## III. EVIDENCE ADMISSIBILITY

### A. STANDARD OF REVIEW

"The trial court's decision on a motion for a new trial will not be reversed absent a clear abuse of discretion." *Poirier*, 192 Mich App at 547. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 689; 777 NW2d 511 (2009)

We also review for an abuse of discretion a trial court's decision to admit evidence. *Id*. Otherwise, unpreserved claims of evidentiary error are reviewed for plain error affecting plaintiff's substantial rights. *Meagher v Wayne State Univ*, 222 Mich App 700, 724; 565 NW2d 401 (1997).

### B. ANALYSIS

Plaintiff argues that the trial court made two evidentiary errors that in combination warrant a new trial. The first error was the court's allowance of re-cross examination of plaintiff. The second error was the court's exclusion of the written report from defendants' life care planner Nurse Cathlin Vinett. We disagree as to both assertions of error.

We find that plaintiff waived any claim of error relative to the re-cross examination by failing to object at the time of trial. See *Davis v Chatman*, 292 Mich App 603, 619; 808 NW2d 555 (2011) ("[W]e conclude that defendant's failure to object to the evidentiary hearing combined with his voluntary participation in the procedure, during which he requested that the court resolve the issues at hand, amounted to a waiver of his demand for a jury trial.").

Plaintiff's challenge to the exclusion of Vinett's report is abandoned for failure to produce the transcript of the motion hearing. MCR 7.210(B)(1)(a); *Taylor v Blue Cross/Blue Shield of Mich*, 205 Mich App 644, 654; 517 NW2d 864 (1994). However, we note that since Vinett, a defense witness, did not testify at trial, her report, if offered for the truth of its assertion

that the cost of care to plaintiff was in excess of ten thousand dollars a year, would have been hearsay. By definition, " '[h]earsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Hearsay is inadmissible unless a recognized exception applies." *People v Mesik*, 285 Mich App 535, 538; 775 NW2d 857 (2009). Vinett's report was otherwise not admissible under any exception to the hearsay rule and was properly precluded as hearsay.

Given our findings concerning plaintiff's appeal, defendants' cross-appeal is moot and need not be addressed.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle