*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TARAYEA SMITH,

            Plaintiff/Counterdefendant-Appellee,

v

MYKING SMITH,

            Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
November 10, 2022

No. 358123
Saginaw Circuit Court
Family Division
LC No. 20-042170-DM

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant, Myking Smith, appeals as of right the judgment of divorce ending his marriage to plaintiff, Tarayea Smith. For the reasons stated in this opinion, we affirm the judgment of divorce in part, but vacate it in part and remand for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant married on December 6, 2015. They had two children[1] together before they separated in July 2017. In September 2016, defendant committed numerous assaultive criminal offenses. Later, he was convicted and sentenced to a minimum of 8 years and 10 months' imprisonment. Defendant's earliest release date is March 11, 2026, and his maximum release date is May 11, 2039.

In May 2020, plaintiff, proceeding pro se, filed for divorce. Plaintiff requested the trial court to award her sole legal and physical custody of the parties' children, to make determinations regarding child support, healthcare, and childcare expenses, and to grant any other equitable relief. In response, defendant, who was represented by counsel, agreed that the trial court should grant a judgment of divorce, but he requested the trial court to order joint custody of the children,[2] to order

---

[1] The children were born on May 13, 2015 and August 11, 2016.

[2] Presumably defendant was referring to legal, not physical custody, given his incarceration. See *Merecki v Merecki*, 336 Mich App 639, 647 n 3; 971 NW2d 659 (2021).

child support consistent with this state's guidelines, to equitably divide the parties' assets and debts, and to grant any other equitable relief. Later, defendant identified the issues for trial as being custody, parenting time, support, property settlement, assets, and debts.

The trial court also entered an order that directed the parties to "participate in a [r]eferee [c]onference regarding matters of child support, custody, parenting time, and conservation of assets . . . ." The referee was to "make efforts to resolve the matters of child support, custody, parenting time, conservation of assets or any other relief sought by either party's pleadings." If the parties failed to "stipulate to an agreement, the [r]eferee . . . [was to] immediately make a recommendation . . . regarding the unresolved issue of child support, custody, and parenting time . . . ." The referee's order was **"to become an immediate interim order of the Court** subject to either party filing an objection within twenty-one (21) days of the Order and requesting a hearing."[3] The parties were further to provide the referee with income information, including a recent paycheck stub or other verification of income, and prior federal and state tax returns with copies of W-2 forms.

The referee held a hearing on November 3, 2020,[4] and submitted findings of fact to the trial court. Due to defendant's incarceration, the referee concluded that plaintiff would have sole physical and legal custody of the children. Defendant would have visitation either by phone or video on either Sunday afternoon or Monday evening for ten minutes per child. The referee did not order any child support given defendant's incarceration, but required defendant to notify the Friend of the Court within thirty days of his release.

The trial court entered a temporary order on November 23, 2020, granting plaintiff sole legal and physical custody of the two minor children, awarding defendant phone or video contact with the children for 10 minutes per child, and providing no child support while defendant was incarcerated. As to the conservation of the parties' assets, the parties and their respective counsel were to "place any agreements in their final judgment of divorce." The trial court's order was to become final 21 days after it was served on the parties on December 4, 2020, unless a party objected.

---

[3] See MCL 552.507(4) ("The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party."); MCR 3.215(E)(4) ("A party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order by filing a written objection and notice of hearing within 21 days after the referee's recommendation for an order is served on the attorneys for the parties, or the parties if they are not represented by counsel. The objection must include a clear and concise statement of the specific findings or application of law to which an objection is made. Objections regarding the accuracy or completeness of the recommendation must state with specificity the inaccuracy or omission.").

[4] Appellant has not provided the transcript from this hearing.

On December 1, 2020, plaintiff filed an "[e]mergency [m]otion to [e]xpedite [h]earing" requesting that all communications between defendant and the children cease.[5] The register of actions indicates that a hearing on plaintiff's motion was scheduled for January 2021, and that defendant was not present at the hearing, even though his attorney was. There is no order[6] or corresponding transcript for that hearing in the record. The register of actions, however, reflects that the trial court awarded defendant "video parenting time" at defendant's expense and the call's duration was at plaintiff's discretion. Plaintiff subsequently obtained counsel.

On April 13, 2021, on the date set for trial via remote access technology in light of the continuing pandemic, plaintiff and her attorney appeared, but defendant was not present and his attorney was late.[7] Defense counsel asserted that he was prepared for trial, but explained that the parties' attorneys had discussed the case and he thought that "the vast majority of issues resolved themselves due to the [defendant's] incarceration." Even so, there were "some lingering disputes about telephone contact and visitation with the children," i.e., defendant's parenting time. Plaintiff's counsel confirmed defense counsel's representations. She clarified that defendant had telephone calls scheduled for a range of times and that the attorneys had discussed arranging them for Sunday at a specific time so that plaintiff and the children could plan their activities. Moreover, defendant sought visitation for the children with his family. Plaintiff opposed this due to molestation allegations within defendant's family and defendant's current unavailability to supervise such visitation. The trial court interjected that it was not inclined to order that type of visitation. Plaintiff's counsel added: "Everything else we believe, Your Honor, I believe we have an agreement on."

The trial court then inquired about defendant, specifically asking whether defense counsel was willing to move forward without him. Defense counsel declined, stating "I don't think that is

---

[5] Whether plaintiff's *in propria persona* motion was an objection to the November order that followed the referee conference is unclear, especially without the transcript. That order was not served upon plaintiff until after her motion was filed and plaintiff's motion was not captioned as an objection although it was apparently prepared two days after the November 23 order was entered. Plaintiff later refiled her motion with a notice of hearing. If plaintiff's motion was an objection to defendant's parenting time order, the court should have scheduled a de novo hearing. See *Butters v Butters*, ___ Mich App ___, ___ NW2d ___ (2022) (Docket No. 359665), slip op at 3-5. If it was not, the referee's order became a final order. See MCR 3.215(E)(1)(c).

[6] The register of actions reflects that defense counsel was to prepare the order. At the April 2021 hearing when the trial court inquired about plaintiff's motion, defense counsel responded: "I don't believe anything came from . . . [it]."

[7] No orders were entered requesting "prisoner participation" in the court proceedings held in January or April 2021. See MCR 2.004. The only order requesting "prisoner participation" in the record concerned the November 2020 referee conference directing the Michigan Department of Corrections to allow defendant to participate in the proceeding via telephone. During the April 2021 hearing, the trial court observed that it did not know why defendant "wasn't available today or why you [defense counsel] didn't take care of that ahead of time . . . ." Even so, lack of compliance with MCR 2.004 is not an issue raised in this appeal.

a good idea . . . ." Defense counsel opined that defendant would want to participate primarily because the phone calls between defendant and the children had "been a train wreck."

Regarding the parenting time issues, defense counsel volunteered

I don't know if these issues [the parenting time disputes] merit the trial court's time. Because, as I indicated, most of the issues self[-]resolved because of the [defendant's] incarceration. Support, parenting time, [and] custody, you know - -

The trial court then observed that plaintiff was going to receive full legal and physical custody. And defense counsel recognized the earlier order to that effect.

After confirming that no proofs regarding the statutory grounds for divorce had been presented, the trial court proposed taking proofs "just in case you guys do work it out." The trial court indicated its inclination to limit defendant's visitation to 7:00 to 8:00 p.m. on Sunday. As defendant's prison calls were limited to 15 minutes, the trial court opined that defendant could divide his time between the children.

The trial court again asserted that it would take proofs to save the parties from having to return. The court added that if the matter resolved, "fine"; if not, "we'll have to set a new trial date."

The trial court then questioned plaintiff, who was under oath, and placed the requisite statutory grounds for the divorce on the record. Again, the trial court stated it was giving the parties "a couple of weeks to work out a [j]udgment." If they could not, "we will have to reset [this]." At the end of the hearing, the court reiterated:

I expect to see a [j]udgment within the next couple weeks, otherwise we will reset this. And you need to let my clerk know if you need it reset.

Two weeks later, on April 27, 2021, plaintiff's counsel e-mailed defense counsel a copy of a proposed judgment of divorce without response. Pertinent to this appeal, the proposed judgment of divorce awarded plaintiff sole legal and physical custody of the children, provided that neither party was awarded support, and forever barred spousal support. After two days without a response, plaintiff's counsel e-mailed defense counsel again. This time, defense counsel acknowledged receiving the proposed divorce judgment, but reported that he had not had time to review it.

On May 17 and 27, plaintiff's counsel sent follow up e-mails to defense counsel without response. Concerned over the court's initial timeline, plaintiff's counsel contacted the court clerk. On June 5, 2021, the trial court set a show-cause hearing on July 21, 2021 regarding why the judgment should not be entered.

On June 24, 2021, plaintiff's counsel again e-mailed defense counsel to follow up in light of the trial court's show-cause order. Defense counsel failed to respond. Plaintiff's counsel also left defense counsel a voicemail regarding the show-cause order without response.

On July 19, 2021, plaintiff's counsel sent defense counsel a final e-mail prior to the show-cause hearing. Defense counsel's secretary called back to report that defense counsel had an

-4-

appointment scheduled with defendant the following day and would contact plaintiff's counsel thereafter.

The next day, which was the day before the scheduled show-cause hearing, plaintiff's attorney filed a written response detailing her efforts to obtain a response from defense counsel. Defense counsel did not respond in writing to the trial court's show-cause order.

At the July 21 show-cause hearing, plaintiff's attorney informed the trial court that defense counsel had not responded to plaintiff's proposed divorce judgment until yesterday. At that point, defense counsel reported that defendant was not in agreement with awarding plaintiff sole custody[8] and that he wanted to reserve the issue of spousal support.[9]

Plaintiff's counsel maintained that awarding custody to defendant was inappropriate due to his incarceration, adding that upon defendant's release, he could petition for custody. Additionally, the trial court had earlier awarded plaintiff sole legal and physical custody and there was no change in circumstances warranting modification. Finally, plaintiff's attorney contended that defendant gave up his right to put on proofs because he failed to appear on the trial date.[10] Plaintiff's counsel then asked the court to sign the judgment.

In response, defense counsel asserted that defendant had been moved to a "difficult facility," which made it arduous for counsel to communicate with him. As a consequence, defense counsel did not have defendant's authority to stipulate to the proposed divorce judgment. Defense counsel again asserted that defendant objected to the proposed custody and spousal support terms.[11] Counsel frankly explained that securing defendant's consent was more difficult given plaintiff's consistent violations of defendant's court-ordered visitation.

The trial court inquired why defense counsel had not conveyed this information to plaintiff's counsel. Defense counsel offered that he had done so in April and in the e-mail stating that he would not agree to the proposed judgment's provisions awarding custody to plaintiff and barring spousal support. The trial court then interjected that defense counsel had not done so until the day before the scheduled show-cause hearing. Defense counsel agreed, explaining that "[t]hat was the first time I [had] talked to [defendant] in probably a month . . . ."[12] Defense counsel added that he believed that on the trial date (April 13), the trial court had indicated that if the parties did

---

[8] This was a change from defense counsel's position at the April 13 hearing.

[9] Again, this was a change from defense counsel's representation at the April 13 hearing.

[10] Plaintiff did not advance this argument during the April 13 hearing. Rather the trial court repeatedly stated it would reset the trial date *if* the parties did not agree on a judgment.

[11] See footnotes 8 and 9.

[12] The trial was scheduled for April 13 and the show-cause was heard in July. Moreover, plaintiff's counsel repeatedly attempted to contact defense counsel from April 27 through July 20.

not agree to entry of the divorce judgment, it "would reschedule a trial date." Defense counsel ended by stating:

> So [plaintiff's] counsel sent over this take it or leave it Judgment[13] consistently that I have no authority to enter into and that [defendant] is refusing to enter into. And if the Court wants to sign it, the Court can sign it. But, it can't be as a consent [judgment].

The trial court signed plaintiff's proposed judgment of divorce, stating that the April trial date came and went. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred and abused its discretion when it failed to hold a trial or make any findings of fact or law before entering the judgment of divorce. We agree in part.

We begin by noting that defendant has not provided this Court with the entire transcript as required by MCR 7.210(B)(1)(a). "The obligation to produce the transcripts applies regardless of whether the transcript is directly relevant to the issues on appeal . . . [and t]his Court can refuse to consider issues for which the appellant failed to produce the transcript." *Thompson v Thompson*, 261 Mich App 353, 359 n 1; 683 NW2d 250 (2004). When an appellant fails to provide relevant transcripts, this Court has alternatively held that "[t]he issue is considered abandoned on appeal," *Taylor v Blue Cross & Blue Shield of Mich*, 205 Mich App 644, 654; 517 NW2d 864 (1994), or that "it constitutes a waiver of the issue," *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768-769; 887 NW2d 635 (2016). In either event, "this Court will refuse to consider issues for which the appellant failed to produce the transcript." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). "However, the Court may consider an issue if the transcript [is] not relevant to the issue on appeal or if the issue on appeal is simply one of law." *Kern v Kern-Koskela*, 320 Mich App 212, 230; 905 NW2d 453 (2017).

In this case, defendant failed to provide the November 3, 2020 transcript from the court-ordered referee conference, addressing custody, parenting time, and child support. Defendant also failed to provide the transcript from the January 4, 2021 hearing on plaintiff's emergency motion to expedite hearing, which sought to halt defendant's parenting time. Because we are presented with an issue that is a matter of law, however, we will proceed.

We next consider whether defense counsel harbored appellate error given his parting remark to the trial court at the July hearing. Defense counsel told the trial court that if it was going to sign the proposed judgment of divorce, it could do so long as it was not captioned a consent judgment of divorce. See e.g., *Loutts v Loutts*, 298 Mich App 21, 36; 826 NW2d 152 (2012) ("It

---

[13] The record reflects that plaintiff's counsel sought either sign off *or* "any corrections" *or* "any changes" *or* "any additions, deletions, or corrections [defendant] want[ed] made."

is unfair to harbor error and use it as an appellate parachute."); *Valentine v Valentine*, 277 Mich App 37, 40; 742 NW2d 627 (2007) ("On numerous occasions, this Court had denied a party the right to raise an appellate challenge when the party harbored an error as an appellate parachute.") (quotation marks omitted). Given the parties' attorneys' representations on the April trial date that they agreed on support, parenting time,[14] and custody, the trial court was led to believe that those matters were settled. See MCR 2.507(G) ("An agreement or consent with the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court . . . ."). On the other hand, the trial court itself repeatedly recognized that the parties' failure to agree upon the divorce judgment necessitated resetting the trial date. It appears that the proceedings became further muddled when the trial court entered the show-cause order after plaintiff's counsel contacted the court's clerk.[15] The show-cause order diverged from what the court had verbally directed: *if* the parties did not agree to the terms of the divorce judgment, they should have informed the clerk so that the trial date would be reset.

Neither attorney, however, is free from fault. As to defense counsel, he failed to timely communicate with both opposing counsel and the court. Indeed, the record suggests that it is questionable whether defendant was motivated by a true dispute over the issues of custody and support, which defense counsel had all but conceded on the date set for trial,[16] or whether he was disgruntled over plaintiff's alleged interference with defendant's parenting time, which, in turn, was limited by his incarceration. Nevertheless, the trial court had repeatedly verbalized its intention to reschedule the trial *if* the parties did not agree on the judgment. At the show-cause hearing, defense counsel voiced both his inability to sign the proposed judgment of divorce and defendant's opposition to custody and spousal support being barred.

A court is required to consider an award of joint custody upon a parent's request and must "state on the record the reasons for granting or denying" the request. MCL 722.26a. In rendering its decision, the court must "determine whether joint custody is in the best interest of the child by considering the" statutory best-interest factors. MCL 722.26a. On the other hand, a trial court's decision to award spousal support, bar support, or reserve support is discretionary. See MCL 552.23 (if the parties' estate and effects "are insufficient for the suitable support and maintenance of either party . . . , the court may . . . award" spousal support); *McCoy v McCoy*, 317 Mich 478, 481; 27 NW2d 62 (1947); *Torakis v Torakis*, 194 Mich App 201, 202; 486 NW2d 107

---

[14] With the exception of issues pertaining to parenting time that defense counsel discussed on the record given that parenting time was limited due to defendant's incarceration.

[15] If the parties had reached an agreement, plaintiff's counsel could have filed a motion to settle the judgment. See MCR 3.211(F)(1), which requires that the moving party, "[w]ithin 21 days after . . . the settlement agreement is placed on the record . . . [to] submit a judgment, order, or a motion to settle the judgment or order, unless the court has granted an extension.").

[16] We do not know what defendant's position was at the earlier referee conference addressing custody, parenting time, and support because defendant failed to provide the transcript from that hearing.

(1992). The "parties . . . are entitled to individual consideration based on the law and facts applicable to their case . . . ." *Myland v Myland*, 290 Mich App 691, 697; 804 NW2d 124 (2010).

"In general, a trial court's legal determinations are reviewed de novo, any underlying factual findings are reviewed for clear error, and ultimate discretionary decisions are reviewed for an abuse of that discretion." *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). A trial court abuses its discretion when it makes an error of law. *Id*. at 116. A finding is clearly erroneous if this Court is "left with a definite and firm conviction that a mistake has been made." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

The court must "enter a judgment dissolving the bonds of matrimony if evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." MCL 552.6(3) "In a divorce case, the trial judge performs two distinct functions. First, the court must find facts on the basis of the evidence presented, and then the court must exercise its discretion in fashioning a disposition." *Beason v Beason*, 435 Mich 791, 798; 460 NW2d 207 (1990). "In its fact-finding role, the trial court must hear the evidence [and] choose which witnesses to credit when the evidence conflicts . . . ." *Id*. "[T]he trial court must make findings of fact and dispositional rulings." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). Specifically, in an action tried without a jury, the trial court must "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." MCR 2.517(A)(1); see MCR 3.210(D) ("The court must make findings of fact as provided in MCR 2.517 . . . ."). "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2). "The court may state [its] findings and conclusions on the record or include them in a written opinion."

In this case, on the date set for trial, the trial court questioned plaintiff, who was under oath, to establish the statutory basis for the parties' divorce. The divorce judgment reads:

> THIS CAUSE is before the court upon the filing of the complaint by Plaintiff. Defendant filed an answer and counter complaint for divorce.[17] Proofs have been presented in court, for which it appears that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. Testimony was taken on the date set for trial . . . . The court has subject matter jurisdiction over this proceeding and personal jurisdiction over the parties.
>
> **IT IS ORDERED:**

---

[17] The register of actions does not reflect that defendant filed a countercomplaint for divorce; instead, in his answer he requested that the court grant a judgment of divorce.

DIVORCE

> The marriage between . . . [the parties] is dissolved, and a divorce from the bonds of matrimony between the parties is ordered and adjudged.

This was sufficient to satisfy the trial court's obligations with respect to findings of fact and conclusions of law in a written opinion as to the parties' divorce.[18]  See MCR 2.517(A) and MCR 3.210(D).

But there were no findings of fact or conclusions of law made at the hearings or prior to entry of the judgment prepared by plaintiff relating to the specific issues addressed in the judgment of divorce on the contested matters of custody[19] and the barring of future spousal support. Although the trial court was not required to overelaborate its findings in particularized detail, the trial court was required to provide at least "[b]rief, definite, and pertinent findings and conclusions on the contested matters" to support its decision to issue the judgment of divorce. MCR 2.517(A)(2).  Because the trial court failed to provide the bare minimum findings of fact and conclusions of law, remand is necessary.

Affirmed in part regarding the parties' divorce, but otherwise vacated and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Neither party having prevailed in full, we decline to award costs pursuant to MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick

---

[18] We are mindful that plaintiff has a child from a later relationship.

[19] See generally MCR 3.200 *et seq*., governing domestic relations actions.  See also MCR 3.210, governing hearings and trials.  For example, MCR 3.210(C) requires the court to hold a hearing when custody of a minor child is contested.  Although custody was addressed during the referee conference, as previously mentioned, defendant has not provided that transcript for our review and this Court has held that a referee errs "in making a custody determination without considering the best-interest factors," and a trial court errs "in accepting the referee's custody recommendation without satisfying itself that the best-interest factors were considered." *Rivette v Rose-Molina*, 278 Mich App 327, 333; 750 NW2d 603 (2008).